DAVID VIGODA *vs.* WALTER E. BARTON.

Suffolk. December 7, 8, 1964. — February 8, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Libel and Slander. Public Officer. Practice, Civil,* Auditor: amendment of report. *Evidence,* Confidential communication, Prior testimony, Absence of witness.

There was no error in a judge's denial of a motion to strike matter from an auditor's report and also to substitute other matter.   [482–483]

The superintendent of a State hospital had a conditional privilege with respect to defamatory statements by him about a subordinate.   [484]

A public officer does not lose his conditional privilege respecting defamatory statements by him about his subordinates merely by reason of his lack of reasonable grounds for belief that the statements are true.   [484–485]

At the trial of an action for libel and slander against a public officer, letters from the defendant to an assistant attorney general and to his personal counsel informing them of the institution of the action and

seeking their aid were properly excluded as confidential communications.   [485–486]

Testimony of a witness before an auditor was properly excluded when offered as evidence at a subsequent trial from which that witness was absent, where the only evidence of the reason for her absence was that she was seventy-two or seventy-three years of age and had become ill the previous week, although she could "walk around but . . . rests a great deal."   [486]

A trial judge's statement in his charge at the trial of an action for libel and slander against a public officer, that if the defendant acted "apart from the duty or apart from the purpose of protecting" the interests giving rise to his conditional privilege such conduct could be found to be an abuse of his privilege, adequately covered the issue of disguise of motive as evidence of malice.   [486–487]

Tort.   Writ in the Superior Court dated March 12, 1957.

There were verdicts for the defendant at the trial before *Paquet,* J., and the plaintiff alleged exceptions.

*William P. Homans, Jr.,* for the plaintiff.

*Philip M. Cronin* for the defendant.

Reardon, J.   This is an action for libel and slander. Counts 3 and 4 of the plaintiff's substitute declaration[1] allege that the defendant, superintendent and appointing authority of Boston State Hospital, libelled the plaintiff by writing and publishing in March, 1956, two letters, the first of which recommended dismissal and the second of which discharged the plaintiff from his position as a psychiatric social worker at Boston State Hospital.   Count 5 alleges the publication of a defamatory "record," referred to in the plaintiff's brief as "unsigned charges."   Count 6 alleges slander in the form of a statement by the defendant that the plaintiff "exposed his genitals before a female member of the staff."   The defendant's answer contained a general denial and pleas of truth and privilege.

The case was originally heard by an auditor, findings of fact not to be final, who found that the defendant did not have reasonable grounds to believe the statements published by him and that such statements were capable of precise verification.   At the subsequent trial before a jury the

---

[1] A demurrer to Count 1 was sustained in *Vigoda* v. *Barton,* 338 Mass. 302. Count 2 has been waived.

report of the auditor, whose ultimate finding was for the defendant,[2] was introduced as evidence. The auditor also filed a supplementary report, substantially identical to the report but for its ultimate findings which were for the plaintiff on each count. Prior to the introduction of the report into evidence the trial judge denied the plaintiff's motion to strike the auditor's ultimate finding for the defendant and to substitute those paragraphs (numbered 60–63) of the supplementary report containing findings for the plaintiff. The supplementary report was not introduced at the trial; in lieu thereof, subsequent to the judge's denial of plaintiff's motion to strike, a stipulation was read to the jury.[3] The jury found for the defendant on all counts, and the plaintiff has filed a bill of exceptions, in the form of an outline bill, in conformance with Rule 22 of the Rules for the Regulation of Practice before the Full Court (1952), added March 5, 1963, 345 Mass. 795.

The jury could have found as follows. The plaintiff is a college graduate with a bachelor's degree in psychology. He has had no post-graduate training. In 1951 he was appointed an assistant psychiatric social worker at Boston State Hospital. He continued in this capacity for four years after which, upon satisfactory completion of civil service tests, he became entitled to the position of psychiatric social worker.[4] On January 1, 1956, the defendant

---

[2] The auditor found "the defendant was guilty of negligence in the writings made by him" but was "unable to find . . . that he was guilty of anything but simple negligence." While allowing the auditor's ultimate finding to stand, the trial court struck the conclusions as to negligence.

[3] In the stipulation counsel agreed that the supplementary report was intended by the auditor to be made in compliance with Rule 86 of the Superior Court (1954) (which, as then worded, required the auditor to "find the subsidiary facts on each issue tried, including the issue of damages") and "that the general findings therein contained are alternative findings on damages which the Auditor would have found had he made general findings for the plaintiff." The stipulation stated the damages assessed in the supplementary report, paragraphs 60–63, and reiterated that the auditor, in fact, found for the defendant.

[4] Civil service regulations do not require graduate study in social work in order to attain the status of psychiatric social worker. The defendant, however, was of the view that all psychiatric social workers at Boston State Hospital should have master's degrees.

appointed the plaintiff to this position which the plaintiff assumed for a probationary period of six months, as required by G. L. c. 31, § 20D.

In February, 1956, the defendant asked Mrs. Cunningham, the acting head social worker, to make inquiries as to the quality of the plaintiff's performance as a psychiatric social worker. Mrs. Cunningham received handwritten evaluations, later discarded by her, from three psychiatric social workers familiar with the plaintiff. These were consolidated by an unidentified stenographer into a single typewritten document — the "unsigned charges" upon which Count 5 of the plaintiff's declaration is based. This document, which contains no names, alleged in substance that "he" (the plaintiff) was deficient in various aspects of his day-to-day work; that "[h]e considered a patient's problem of threatening a Family Care mother with a knife for two days as simply part of the patient's adjustment and a problem of the Family Care mother"; that he discouraged new students from continuing in the formal study of social work; that he was "argumentative" at meetings; that he "presented himself before a female staff member with his 'fly' open"; and that "[h]is entire attitude reflects unresolved personal sexual problems." This "record" was placed by the defendant on a desk to be filed by his secretary in the plaintiff's file. The defendant, whose duties involved the supervision of 1,100 employees in a hospital having 3,100 patients and who received fifty to one hundred reports daily, did not discuss the "unsigned charges" with Mrs. Cunningham or anyone else, nor did he attempt to verify the statements.

On March 6, 1956, and March 21, 1956, the defendant wrote to the plaintiff the letters which are the basis for Counts 3 and 4. Copies were sent to the department of mental health and the civil service commission. The first letter informed the plaintiff of his recommended dismissal, effective March 24, 1956, for "lack [of] both the training and experience essential to perform" his duties, which conclusion was based "upon your personal qualifications and

relationships with staff, your demonstrated lack of professional skill and your limited capacity for performance." The second letter, which formally dismissed the plaintiff, in effect restated the contents of the first, adding that the discharge was pursuant to G. L. c. 31, § 20D.[5]   At the trial the defendant testified that the plaintiff's dismissal was based "in part" on the report from Mrs. Cunningham and that the charges "were consistent with the kind of reports I had received from other sources."   The auditor found that the dismissal letters resulted, in part, from the defendant's belief that psychiatric social workers should have master's degrees and that the defendant had no reasonable grounds to believe the matter contained in the letters.

On March 13, 1956, the defendant wrote a letter of recommendation on behalf of the plaintiff, stating that "[h]e was regular in his attendance, has been always willing to do more than his share of assigned tasks, has gotten along well with other staff members and has been liked by patients. He is a highly intelligent, capable person and we are glad to recommend him to you for employment."   The auditor found that the defendant believed these statements to be true at the time they were made.

1.   We first consider whether the trial court erred in denying the plaintiff's motion to strike the ultimate finding in the auditor's report and to substitute for it paragraphs 60–63 of the supplementary report.   Although the plaintiff entered into a "Stipulation in Lieu of Auditor's Supplementary Report," the purpose of which was to avoid recommittal of the supplementary report on account of the

---

[5] The statute provides, in part: "If the conduct or capacity of a person serving a probationary period . . ., or the character or quality of the work performed by him, is not satisfactory to the appointing authority, he may, at any time after such person has served thirty days and prior to the end of such probationary period, give such person a written notice to that effect, stating in detail the particulars wherein his conduct or capacity or the character or quality of his work is not satisfactory, whereupon his service shall terminate.   The appointing authority shall at the same time send a copy of such notice to the director."

The plaintiff was later reappointed to his position.   See *Vigoda* v. *Superintendent of Boston State Hosp.* 336 Mass. 724.

auditor's failure to comply fully with Rule 86 of the Superior Court (1954), an exception was taken to the judge's ruling on the motion prior to the filing of the stipulation and its introduction in evidence. Thus the issue is properly before us.

The defendant has argued for the applicability of *Papetti v. Alicandro,* 317 Mass. 382. There, as here, the plaintiff on motion sought to strike out part of the auditor's report and substitute "other matter." The court stated, "There is no support in law for such a motion albeit the new matter sought to be substituted constitutes a correct conclusion of law on the findings of the auditor. An appropriate method of achieving the intended result would have been by requests for instructions." *Ibid* p. 390. Notwithstanding changes in Rule 86 of the Superior Court Rules, we agree with the defendant's contention and, on that ground, sustain the ruling of the judge below.

But the substantive issue which the plaintiff sought to raise in his motion — whether a lack of reasonable grounds to believe the matter communicated compels a finding that the defendant abused his conditional privilege — is preserved in the denial of his request no. 69, to which he took exception. This reads: "In order for you, the jury, to find that the defendant had reasonable grounds to believe any of the matter which you find that he published concerning the plaintiff, you must find that he knew such matter of his own knowledge or that it was communicated to him prior to the date of publication." This request rested, as did the plaintiff's motion to strike and other aspects of his argument, upon the supposition that absent reasonable grounds to believe in the truth of the matter asserted the defendant lost his conditional privilege.

As superintendent of Boston State Hospital, a position which he occupied until March 31, 1963, the defendant was an executive official of the Commonwealth. Indeed the defendant has argued that his official statements should be absolutely privileged, relying on *Barr v. Matteo,* 360 U. S. 564, and its companion case, *Howard v. Lyons,* 360 U. S.

593.   In *Barr* v. *Matteo,* a libel suit brought by subordinate officials against the acting director of the office of rent stabilization, the Supreme Court of the United States held that "within the outer perimeter of . . . [the official's] line of duty" (360 U. S. at 575) there is an absolute privilege — "not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government." 360 U. S. at 572–573. The defendant makes reference also to *New York Times Co.* v. *Sullivan,* 376 U. S. 254, where the court held that in defamation suits brought by public officials against critics of their official conduct actual malice must be shown and noted that the "privilege for criticism of official conduct is appropriately analogous to the protection accorded a public official when *he* is sued for libel by a private citizen." 376 U. S. at 282 (footnote omitted).

The States are presently divided, as regards executive officials, between the conditional privilege and absolute privilege doctrines. Compare *Donner* v. *Francis,* 255 Ill. App. 409, 412–413 (officer in charge of government hospital held absolutely privileged) with *Raymond* v. *Croll,* 233 Mich. 268, 273 (State budget director held qualifiedly privileged). See Handler & Klein, The Defense of Privilege in Defamation Suits Against Government Executive Officials, 74 Harv. L. Rev. 44. The rule in Massachusetts has long been that absolute privilege is limited to comparatively few cases. *Howland* v. *Flood,* 160 Mass. 509, 516.

We need not determine here whether there may be an absolute privilege under some circumstances for executive officials of the Commonwealth, or some of them, acting within the scope of their duties. We are of opinion that the defendant in any event had a conditional privilege sufficient to protect him from liability. We hold that a finding of lack of reasonable grounds to believe the matter communicated by an executive official does not result in the loss of his conditional privilege. Thus the denial of the plaintiff's request no. 69 was correct since the request rested on an erroneous basis.

We have discussed the question of absolute privilege because the policy factor which has led to immunity for Federal officials, and for State officials in several jurisdictions — the desire not to "dampen the ardor" of officials "in the unflinching discharge of their duties," *Gregoire* v. *Biddle,* 177 F. 2d 579, 581 (2d Cir.) — is of great influence in our formulation of the conditional privilege which attaches to an executive office. Also of considerable influence is the reasoning of *New York Times Co.* v. *Sullivan,* 376 U. S. 254. We conclude that cases not involving public officials (e.g. *Shore* v. *Retailers Commercial Agency, Inc.* 342 Mass. 515) are not controlling and that government officials would be inadequately protected in the discharge of their duties by a standard requiring "reasonable grounds" to believe in the truth of the matter communicated. See *Barry* v. *McCollom,* 81 Conn. 293, 297; *Hemmens* v. *Nelson,* 138 N. Y. 517, 524. They are entitled to be free, and beyond that the public interest requires that they be free, to engage in action which may have its genesis in honest error. The defendant here was a State official in a position laden with the burdens of administration of a large State hospital, daily dealing with the hundreds of lives entrusted to his care as well as the careers of those over whom he had supervision. Where the official believes the matter to be true (see Restatement: Torts, § 600) and has not acted with actual malice (see *Galvin* v. *New York, N. H. & H. R.R.* 341 Mass. 293, 297) or with reckless indifference to the rights of the individual citizen, his conditional privilege is not abused.

2. In March, 1957, the defendant wrote letters to an assistant attorney general and to his personal counsel, informing them of the institution of the present action and seeking their aid. These two letters, copies of which were placed in the plaintiff's file at the hospital, were properly excluded as confidential communications between lawyer and client. There is no showing that any third person not acting in an agency capacity actually saw and read the letters. See *Commonwealth* v. *Best,* 180 Mass. 492, 494; *Drew* v. *Drew,* 250 Mass. 41. Nor has the plaintiff shown a

waiver of the privilege by the defendant. *Foster* v. *Hall,* 12 Pick. 89.

It may be added that neither letter would have tended to show malice or recklessness or disbelief in the truth of the matter communicated. Thus the exclusion could in no way have prejudiced any rights of the plaintiff.

3. At the auditor's hearing one Ann Dupee of Burlington testified with regard to the knife incident related in the "record" from Mrs. Cunningham to the defendant. The defendant's counsel declined an opportunity to cross-examine the witness before the auditor. At the trial the plaintiff tried to introduce this prior testimony as evidence. To explain the absence of the witness, her daughter testified that her mother was seventy-two or seventy-three and had become ill the previous week, stating that her mother "can walk around, but she rests a great deal."

The exclusion of the prior testimony was proper. Without considering the plaintiff's contention that we should now overrule *Commonwealth* v. *McKenna,* 158 Mass. 207, or expressly limit it to criminal proceedings, we sustain the ruling of the trial judge on the ground that the plaintiff failed to show that the witness was so ill as to be unable to travel. See Wigmore, Evidence (3d ed.) § 1406.

4. In his instructions to the jury the trial judge stated that the jurors could "consider the extent of the investigation that Dr. Barton made or was required to make in view of his position as Superintendent." The plaintiff contends that that portion of the charge was improper as a standard for the determination of "reasonable grounds" in that it gave weight to the "position" of the defendant. Our view of the scope of the defendant's conditional privilege, as previously discussed, renders further discussion of the plaintiff's argument unnecessary.

5. The plaintiff contends that the trial judge should have instructed the jury that if it was "in whole or in part" the defendant's purpose, in publishing material regarding the plaintiff, to see that one not holding a master's degree did not become a psychiatric social worker, then the defendant

could be found to have abused his conditional privilege. The judge charged that if the defendant acted "apart from the duty or apart from the purpose of protecting" the interests giving rise to the privilege, the jury could consider whether this was an abuse of privilege. Assuming that a disguise of motive would be evidence of malice, we consider the judge's charge sufficiently specific and accurate. The rule stated in *Doane* v. *Grew*, 220 Mass. 171, 177, is that defamatory statements "not spoken pursuant to the right and duty which created the privilege" are not entitled to protection. The charge adequately informed the jury of this rule.

Other exceptions in the plaintiff's outline bill have been waived.

*Exceptions overruled.*