RUSSELL N. MULGREW vs. CITY OF TAUNTON & another.[1]

Bristol. April 1, 1991. - July 11, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ

*Practice, Civil*, Summary judgment. *Libel and Slander. Public Officer. Municipal Corporations*, Officers and employees. *Privacy. Police*, Resignation.

A qualified or conditional privilege protected a police chief from liability for defamation based on his written communication to the city council, made in his official capacity, on the subject of a former police officer's past job performance. [634-635]

A plaintiff in a defamation action did not establish that the defendant, whose statements were subject to a conditional privilege, recklessly published the defamatory statement. [636-637]

Limited disclosures by a police chief in a written response to an inquiry by the city council, with respect to the past job performance of a former police officer, did not constitute an unreasonable interference with the former officer's privacy in violation of G. L. c. 214, § 1B. [637]

The judge at the jury-waived trial of a claim for disability benefits pursuant to G. L. c. 41, § 111F, properly concluded on the evidence before him that the plaintiff had voluntarily resigned his position as a police officer; therefore his benefits under § 111F had been terminated. [638-640]

CIVIL ACTION commenced in the Superior Court Department on December 9, 1985.

A motion of the defendant David Westcoat for summary judgment was heard by *William H. Carey*, J., and entry of separate and final judgment was ordered by him; in addition, claims against the city of Taunton were also heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Philip N. Beauregard* for the plaintiff.

_____

[1]David Westcoat.

*Marc LaCasse* for David Westcoat.

*Edmund J. Brennan, Jr.* (*Colleen C. Karsner* with him) for the city of Taunton.

LIACOS, C.J. The plaintiff, Russell N. Mulgrew, resigned his position as a police officer for the city of Taunton (city) on November 9, 1984. Two months later, he sought reinstatement unsuccessfully. The present action was commenced by the plaintiff in the Superior Court against the city and its chief of police, David Westcoat. Westcoat moved for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), and a judge of the Superior Court granted the motion.[2] The claims against the city were tried in a proceeding jury-waived. The judge made findings of fact and rulings of law, and entered judgment in favor of the city. The plaintiff appealed; the case is before us on our own motion.

1. *The Complaint.*

In count one of his complaint, the plaintiff sought a declaratory judgment that he was entitled to disability benefits pursuant to G. L. c. 41, § 111F (1990 ed.), and a declaratory judgment that his resignation from the police department was not voluntary. In addition, the plaintiff sought damages against the city for its request that the plaintiff take a lie detector test allegedly in violation of G. L. c. 149, § 19B (1990 ed.), and for violating the plaintiff's Federal and State constitutional rights. 42 U.S.C. § 1983 (1988). G. L. c. 12, §§ 11H, 11I (1990 ed.). In count two of the complaint, the plaintiff sought damages against Westcoat for defamation and invasion of privacy. See G. L. c. 214, § 1B (1990 ed.).[3]

2. *Summary Judgment.*

a. *Defamation.* We have stated that we favor the use of summary judgment procedures in cases where defamation is alleged. *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 708

---

[2] The judge originally granted the motion as to some of the claims only. The remaining claims were waived by the plaintiff at a later time. See *infra* note 5.

[3] Count two of the complaint also named the city as a defendant in the defamation and invasion of privacy claims. These claims were dismissed on stipulation of the parties.

(1987), cert. denied, 485 U.S. 940 and 485 U.S. 962 (1988). *New England Tractor-Trailer Training of Conn., Inc.* v. *Globe Newspaper Co.*, 395 Mass. 471, 480 (1985). Defendants, however, "must still meet the usual burden under rule 56 of demonstrating by evidence 'considered with an indulgence in the plaintiff's favor,' the absence of disputed issues of material fact and their entitlement to judgment as a matter of law." *Godbout* v. *Cousens*, 396 Mass. 254, 258 (1985), quoting *National Ass'n of Gov't Employees, Inc.* v. *Central Broadcasters Corp.*, 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980).

The facts of record, viewed in favor of the plaintiff, are as follows. On October 14, 1984, at 2:40 A.M., the plaintiff, while on duty as a Taunton police officer, was assaulted by two individuals. As a result of the attack, the plaintiff received injuries to his head and back. The plaintiff also suffered emotional distress as a consequence of the assault. The plaintiff's physician advised him to seek psychological treatment and not to return to full duty as a police officer. Shortly after the incident, the city placed the plaintiff on leave with pay pursuant to G. L. c. 41, § 111F. In early November, 1984, the plaintiff requested that he be placed on "light duty." The then chief of police, Roger Renaud, told the plaintiff that "light duty" assignments were not within the policy of the police department.[4] As far as the chief was concerned, the plaintiff was medically fit to return to work. The chief told the plaintiff that his benefits under § 111F would be terminated. The plaintiff did not consider himself capable of resuming his full duties as a police officer. As a result, the plaintiff resigned from the police department.

On January 18, 1985, the plaintiff wrote the mayor and city council (council) requesting that he be reinstated. On January 22, 1985, the plaintiff's request was referred by the council to its committee on police and licenses (committee). The committee inquired of Westcoat whether in his opinion

---

[4]The defendant Westcoat replaced Renaud as the city's chief of police on December 22, 1984.

the plaintiff should be reinstated. On February 4, 1985, Westcoat wrote the committee a letter stating that the plaintiff's performance as a police officer had been poor; that the plaintiff had been a "sick day" abuser; that there were "investigational inconsistencies and unanswered questions" regarding the plaintiff's version of the incident on October 14, 1984; and that the plaintiff had left the department under a "cloud of suspicion." Westcoat recommended to the committee that the plaintiff not be reinstated. On March 25, 1985, Westcoat repeated the statements made in the February 4 letter when he appeared before the committee. The committee accepted Westcoat's recommendation, and referred its negative recommendation to the council. The council voted not to reinstate the plaintiff.

The plaintiff alleges that Westcoat's statements made in the February 4 letter and repeated before the committee on March 15 were defamatory.[5] Westcoat argues that the statements were absolutely privileged because they were made in direct response to an official inquiry of the council, or alternatively, that they were absolutely privileged because they were made during the course of his official duties as the chief of police.

An absolute privilege provides a defendant with a complete defense to a defamation suit even if the defamatory statement is uttered maliciously or in bad faith. *Ezekiel* v. *Jones Motor Co.*, 374 Mass. 382, 385 (1978). A qualified or conditional privilege, on the other hand, immunizes a defendant from liability unless he or she acted with actual malice, *Tosti* v. *Ayik*, 386 Mass. 721, 726 (1982), or unless there is "unnecessary, unreasonable or excessive publication," and the plaintiff establishes that the defendant published the defamatory information recklessly. *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 509 (1984), quoting *Galvin* v. *New York, N.H. & H.R.R.*, 341 Mass. 293, 297-298 (1960).

---

[5]The complaint alleged that Westcoat made other defamatory statements. The plaintiff at a later time waived his claims arising from these other statements.

See *Correllas* v. *Viveiros, ante* 314, 320 (1991). We need not determine whether an absolute privilege applies to statements made by Westcoat since we conclude that, at the very least, a qualified privilege applies, and that it is sufficient to protect him from liability.[6] Statements made by public officials while performing their official duties are conditionally privileged. See *Vigoda* v. *Barton*, 348 Mass. 478, 483-485 (1965); *Bradley* v. *Heath*, 12 Pick. 164, 165 (1831); Restatement (Second) of Torts § 598A (1977). Cf. *Gildea* v. *Ellershaw*, 363 Mass. 800, 820 (1973) (public official acting in good faith not liable to private party for negligence in making discretionary decision within scope of authority). The threat of defamation suits may deter public officials from complying with their official duties when those duties include the need to make statements on important public issues. The conditional privilege, therefore, is meant to allow public officials to speak freely on matters of public importance during the exercise of their official duties. See *Vigoda* v. *Barton, supra*; W. Prosser & W. Keeton, Torts § 115, at 830 (1984).

Westcoat's statements about the plaintiff were made in his official capacity as chief of police in response to a request by the committee.[7] The public has an interest in having a police force comprised of competent and able individuals. It was the committee's responsibility to recommend to the council whether the plaintiff should be reinstated. Westcoat, in the exercise of his official duties, was conditionally privileged in informing the committee about the plaintiff's past performance as a police officer.[8]

---

[6]This court has recognized the existence of an absolute privilege in relatively few circumstances. See *Sriberg* v. *Raymond*, 370 Mass. 105, 108 (1976) (judicial proceedings); *Sheppard* v. *Bryant*, 191 Mass. 591, 592-593 (1906) (legislative committee). See generally J.R. Nolan & L.J. Sartorio, Tort Law § 130, at 195-202 (1989).

[7]Section 18-45(b) of the Taunton code states in part that the chief of police "shall be responsible for the conduct and administration of the police department, to the mayor and municipal council."

[8]Since we conclude that Westcoat's statements were conditionally privileged because they were made in his capacity as a public official, we need not reach the issue whether the proceedings before a city council or other

When a defendant's statements are privileged, a plaintiff cannot succeed in a defamation suit unless he or she establishes that the defendant knowingly or recklessly published the defamatory statement. *Tosti* v. *Ayik, supra. Bratt, supra.* See Restatement (Second) of Torts § 600 (1977). "The plaintiff is entitled to a jury trial if there is some indication before the motion judge from which an inference of [recklessness] could be drawn." The plaintiff in this case argues that there was evidence before the judge from which a jury could have concluded that Westcoat acted recklessly. *Godbout* v. *Cousens, supra* at 259. As evidence of recklessness, the plaintiff points to the fact that Westcoat admitted during a deposition that he did not inspect the plaintiff's personnel file before telling the committee that the plaintiff was a sick leave abuser. Westcoat, however, stated in the deposition that he did not recall inspecting the plaintiff's personnel file, not that he failed to do so. In fact, Westcoat filed an affidavit in which he stated that he *did* review the plaintiff's personnel file "as a direct response to the Municipal Council's inquiry."[9] The plaintiff also contends that Westcoat did not have a sufficient basis upon which to tell the committee that there were "unanswered questions" regarding the plaintiff's version of the assault and that the plaintiff resigned under a "cloud of suspicion." It is clear, however, from the police reports examined by Westcoat before making the

---

local government entity are privileged, and if so, whether an absolute or conditional privilege applies. See Restatement (Second) of Torts § 590, at 254 comment c (1977) (absolute privilege "applicable to members of subordinate bodies to which the state has delegated legislative power, such as a city council or a city board"). But see *Cowman* v. *LaVine*, 234 N.W.2d 114, 124-125 (Iowa 1975) (only conditional privilege applies to proceedings before city council); *Cohen* v. *Bowdoin*, 288 A.2d 106, 113 (Me. 1972) (same).

[9]The file, according to answers to interrogatories filed by the city, and later adopted by Westcoat, revealed that during 1982 through 1984, the plaintiff took thirty-seven and one-half sick days, twenty-eight and one-half of which were taken either the day before or the day after the plaintiff's day off.

statements in question, that the police had reason to doubt the plaintiff's version of the assault.[10]

b. *Invasion of privacy.* General Laws c. 214, § 1B, provides, in pertinent part, that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." "This court has interpreted § 1B to proscribe . . . disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate countervailing interest." *Bratt, supra* at 518. The plaintiff argues that Westcoat's statements violated § 1B. As mentioned above, however, the public has an important interest in having a police force comprised of competent and able individuals. The disclosures by Westcoat involving the plaintiff were limited to issues regarding the plaintiff's fitness to be a police officer, and therefore, they did not constitute an unreasonable interference with the plaintiff's privacy. The judge did not err in granting the motion for summary judgment.

3. *Jury-waived Trial.*

The judge, following the jury-waived trial, made the following findings of fact. The plaintiff suffered injuries while on duty as a police officer during the early morning hours of October 14, 1984. As a result of the injuries, the city placed him on leave without loss of pay pursuant to G. L. c. 41, § 111F.[11] The plaintiff sought treatment from doctors of his

---

[10]The plaintiff told the police officers who investigated the assault that he had struggled with the two assailants; that during the struggle he had lost several items, including three buttons from his shirt; and that dirt and rocks had hit his face when the assailants drove away in a van. The police investigation found no evidence of a struggle in the grassy area where the assault allegedly took place; no buttons were found on the ground; and no "spin-out" marks from the van were found.

[11]The statute, in pertinent part, states that "[w]henever a police officer or fire fighter of a city, town, or fire or water district is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own . . . he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period after such police officer or fire fighter has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers or fire

own choice, Dr. Thomas L. Gleason, a physician, and Dr. Robert K. Hartman, a psychologist. On or about November 3, 1984, the plaintiff met with the chief of police, Roger Renaud, who informed the plaintiff that his § 111F benefits would be terminated based on the medical reports written by Dr. Gleason and Dr. Hartman. On November 9, 1984, the plaintiff submitted his resignation to the mayor and to the council. Prior to the plaintiff's resignation, Chief Renaud requested that the plaintiff take a lie detector test.

The judge concluded that the city was warranted in terminating the § 111F benefits on the basis of the medical reports written by Dr. Gleason and Dr. Hartman. He also determined that the plaintiff's resignation was voluntary, and that there was no violation of the plaintiff's due process rights. Finally, the judge concluded that Chief Renaud's request that the plaintiff take a lie detector test was motivated by a desire to clarify some of the discrepancies regarding the plaintiff's version of the assault. The judge concluded that the city did not violate G. L. c. 149, § 19B, since the request that the plaintiff take a lie detector test did not play a role in the termination of the plaintiff's § 111F benefits, nor was the taking of the test made a condition of his continued employment.

The plaintiff argues that the judge erred in concluding that (1) the city properly terminated his § 111F benefits; (2) the plaintiff's resignation was voluntary; and (3) the city did not violate the plaintiff's due process rights or G. L. c. 149, § 19B. We begin our discussion with the issue of whether the judge erred in concluding that the plaintiff voluntarily resigned from the city's police department. If we conclude that the judge did not err in finding that the plaintiff's resignation was voluntary, it will not be necessary for us to address the other issues raised by the plaintiff.

A resignation which is free of fraud, coercion, or duress operates to terminate a police officer's right to continued

---

fighters in such city, town or district determines that such incapacity no longer exists." G. L. c. 41, § 111F.

compensation under § 111F. *Jones* v. *Wayland*, 374 Mass. 249, 259-260 (1978), *S.C.*, 380 Mass. 110 (1980). The only evidence introduced during the trial indicating that the plaintiff's resignation was not voluntary was the expert testimony of Dr. Barbara Acksen, a clinical psychologist. ·Dr. Acksen, who began treating the plaintiff in March, 1987, testified that the plaintiff suffered from psychological distress caused by the assault coupled with the skepticism expressed by some members of the Taunton police department regarding the plaintiff's version of the assault. As a result of the psychological distress, the plaintiff, according to Dr. Acksen, was incapable in November, 1984, of making a voluntary decision to resign.

The plaintiff suggests that the judge erred in not accepting Dr. Acksen's conclusion that the resignation was involuntary. A finder of fact, however, is free to reach its own conclusions and may disregard part or all of an expert's testimony. See *Commonwealth* v. *Rosenberg*, *ante* 347 (1991); *Commonwealth* v. *Lunde*, 390 Mass. 42, 47 (1983); P.J. Liacos, Massachusetts Evidence 104 (1981 & 1985 Supp.). In reviewing the judge's finding that the plaintiff's resignation was voluntary, our role is limited to determining whether it was clearly erroneous. See *Powers* v. *Freetown-Lakeville Regional School Dist. Comm.*, 392 Mass. 656, 659 (1984). There was evidence presented at trial that on November 3, 1984, the day the city terminated the plaintiff's benefits, he wrote a draft letter of resignation; that he later discussed the resignation with his wife; that on November 9, 1984, he tendered his resignation; and that he made his resignation effective as of November 18, 1984, in order to receive paid sick days which were owed to him. The judge's finding that the plaintiff voluntarily resigned from the city's police department was not clearly erroneous.

Since we conclude that the judge did not err in finding that the plaintiff's resignation was voluntary, and since a voluntary resignation terminates a police officer's benefits under § 111F, *Jones* v. *Wayland, supra*, it is not necessary for us to address the plaintiff's argument that it was improper for the

city to terminate his § 111F benefits based on the medical reports submitted by his physicians. Similarly, since the plaintiff voluntarily resigned, he waived whatever process was due to him as a result of the termination of his § 111F benefits.[12]

*Judgment and order granting summary judgment affirmed.*

---

[12]The judge found that Chief Renaud asked the plaintiff to take a lie detector test as a way of resolving some of the inconsistencies between the plaintiff's account of the assault and the reports written by police officers investigating the assault. The plaintiff suggests that his refusal to take the lie detector test played a role in the termination of his § 111F benefits. The plaintiff, however, does not point to any evidence introduced during the trial from which it could be concluded that Chief Renaud based his decision to terminate the § 111F benefits on this fact.

The plaintiff also claims that the judge erred in concluding that G. L. c. 149, § 19B, was not violated in this case. The statute, in pertinent part, states that "[i]t shall be unlawful for any employer or his agent, with respect to any of his employees, or any person applying to him for employment, including any person applying for employment as a police officer, to subject such person to, or request such person to take a lie detector test within or without the commonwealth, or to discharge, not hire, demote or otherwise discriminate against such person for the assertion of rights arising hereunder. This section shall not apply to lie detector tests administered by law enforcement agencies as may be otherwise permitted in criminal investigations." Even if we assume, without deciding, that the statute was violated when Chief Renaud asked the plaintiff to take the lie detector test, there is no evidence that the city terminated the plaintiff's § 111F benefits because of his refusal to take the test, and therefore, the possible violation of § 19B does not support the plaintiff's claim that his § 111F benefits were improperly terminated. The plaintiff does not argue that he is entitled to damages for the city's alleged violation of § 19B.