NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12175


SAUNDRA R. EDWARDS  vs.  COMMONWEALTH & another.[1]


Essex.      February 6, 2017. - June 8, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, & Lowy, JJ.


Governor.  Privileged Communication.  Evidence, Privileged
     communication.  Libel and Slander.



Civil action commenced in the Superior Court Department on
December 31, 2014.

Motions to dismiss were heard by Richard E. Welch, III, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Michael J. Pineault for Deval Patrick.
William H. Sheehan, III (Thomas J. Flannagan also present)
for the plaintiff.


GAZIANO, J.  On September 16, 2014, then Governor Deval

Patrick removed Saundra R. Edwards from her position as chair of

the Sex Offender Registry Board (SORB).  A few days later, in

response to media inquiries about Edwards's abrupt departure,

_____

[1] Deval Patrick.

Patrick explained that, among other reasons, he had decided to replace Edwards because she inappropriately had attempted to pressure a SORB hearing officer to change the outcome of one of his decisions on an offender's classification level. In subsequent comments to the media, after Edwards had filed an action for defamation and wrongful termination in the Superior Court, Patrick repeated his explanation that he had decided to remove Edwards from office because she had interfered with the independence of a SORB hearing officer. Edwards filed an amended complaint, asserting a wrongful termination claim against the Commonwealth, and two defamation claims against Patrick, individually, one for each of the two statements.

Patrick moved pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), to dismiss Edwards's amended complaint on two grounds. He argued that the court should conclude, consistent with Federal law and with a number of other jurisdictions, that he, as governor, had an absolute privilege for statements made in the course of his official duties. In the alternative, Patrick argued that he had a qualified privilege, because the statements were made while acting within the scope of his official duties concerning Edwards's status as a public official, and that the allegations in the amended complaint were not sufficient to overcome that privilege. Because, Patrick maintained, the amended complaint contained only bare conclusory

assertions of actual malice without allegations of facts sufficient to support those assertions beyond the level of mere speculation, the complaint did not meet the pleading requirements for a defamation claim under Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).  A Superior Court judge denied Patrick's motion to dismiss the defamation claims, and denied the Commonwealth's motion to dismiss the wrongful termination claim.  Patrick appealed from the denial of his motion, and both defendants sought a stay in the Superior Court pending the resolution of that appeal.  We allowed Patrick's motion for direct appellate review.

Considering first whether the amended complaint alleges facts sufficient to overcome a qualified or conditional privilege, we conclude that it does not assert facts sufficient to demonstrate that Patrick's statements to the media were made with actual malice, and thus the complaint against him properly should have been dismissed.  Given this conclusion, we need not reach Patrick's argument as to the existence of an absolute privilege against defamation claims for a governor, or other high-ranking State official, for statements made in the course of his or her official duties.

1.  Background.  We recite the facts asserted in the amended complaint, taking them as true for purposes of evaluating the motion to dismiss.  SORB is an administrative

agency within the Executive Office of Public Safety and Security (EOPSS). SORB is responsible for enforcing the provisions of the sex offender registry law, G. L. c. 6, §§ 178C-178Q, and also promulgates rules, regulations, and guidelines to implement those provisions. See G. L. c. 6, § 178K (1). The chair of SORB is "appointed by and serve[s] at the pleasure of the governor." Id.

Edwards had been a member of the Massachusetts bar for almost twenty-five years when Patrick appointed her as chair of SORB on November 5, 2007. Edwards served in that role until September 16, 2014. Prior to her appointment, Edwards had served as an assistant district attorney in Plymouth County for thirteen years. She specialized in prosecuting sex offenses, child abuse, and domestic violence.

a. Sigh-Paglia matter. According to the amended complaint, in September, 1993, Patrick's brother-in-law, Bernard Sigh, pleaded guilty to a charge of spousal rape in California; in his plea he admitted that he "accomplished an act of sexual intercourse with [his] wife against her will by means of force." He was sentenced to a term of incarceration followed by five years of probation. Sigh moved to Massachusetts in 1995, but

did not register as a sex offender[2] when the Legislature enacted the sex offender registry law in 1996.[3]

In December, 2006, almost a year before Edward's appointment as chair, SORB notified Sigh of his duty to register as a level 1 (lowest risk) sex offender. Sigh sought a hearing to challenge the determination that he had been convicted of a "like offense" to the offense of rape as defined in Massachusetts law. SORB scheduled a hearing on his petition and assigned the matter to one of its board members. While that hearing was pending, SORB referred to the office of the Attorney General the question whether a conviction of spousal rape under California law was a "like offense" to rape under Massachusetts law, thus requiring a Massachusetts resident to register with SORB.

SORB hearing officer Attilio Paglia replaced the previously assigned board member, and scheduled a hearing on Sigh's

---

[2] A sex offender is defined as a person who has been convicted of any violation of enumerated Massachusetts sex offenses, as well as like violations in other jurisdictions. See G. L. c. 6, § 178C. See generally Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 615 (2010).

[3] The sex offender registry law, G. L. c. 6, §§ 178C-178Q, requires that anyone who has been convicted as a sex offender must register with SORB and with the local police department where the individual lives, unless, in limited circumstances, an individual has been deemed exempt. See G. L. c. 6, § 178E.

petition.[4]  SORB officials authorized Paglia to decide preliminary motions in the case, but instructed him to continue the hearing pending the Attorney General's review of the legal question concerning the status in Massachusetts of Sigh's offense.

Notwithstanding these instructions, Paglia began the hearing on August 1, 2007.  After being informed of the hearing, Paglia's supervisor ordered him not to issue a decision in the matter pending a determination by the Attorney General.  Paglia continued to hear evidence on August 10 and 31 and issued an oral decision finding that the California crime of spousal rape is not a like offense to the Massachusetts crime of rape. Accordingly, he relieved Sigh of the obligation to register as a sex offender.  Paglia did not issue a written decision, as is required by SORB regulations.

b.  Edwards's involvement in the Sigh-Paglia matter. Edwards took office on November 5, 2007, several months after the Sigh hearing and the oral decision.  She was advised by SORB's counsel and other SORB officials of the disagreement between SORB administrators and Paglia.  She also learned that,

---

[4] Edwards's amended complaint alleges that Paglia, for an unknown reason, "took the extraordinary step" of removing the case from the previously assigned board member and assigning the case to himself.

as a result of his actions with respect to the Sigh matter, Paglia had been disciplined for insubordination.

On May 9, 2008, Edwards met with Paglia to discuss the Sigh matter. She informed Paglia (who is not an attorney) of the legal elements of rape as defined under Massachusetts law, and also told him that the California crime of spousal rape is a like offense to the Massachusetts crime of rape because "rape is rape." After consulting with EOPSS and SORB's general counsel, Edwards directed that a written decision issue in the Sigh case. SORB also enacted an emergency regulation to permit it to correct errors of law by hearing officers. To prevent further classification errors, Edwards also instituted a training program on the elements of Massachusetts sex offenses and on conducting classification hearings.

Paglia resigned from his position at SORB and commenced a "whistleblower" action, G. L. 149, § 185, in the Superior Court against SORB, Edwards in her official capacity, and other SORB officials, claiming retaliation for his decision in the Sigh matter.[5] Paglia claimed that the SORB defendants, including Edwards, engaged in repeated and unsuccessful efforts to change

---

[5] Because Edwards referenced Paglia's complaint in her amended complaint, and Patrick attached the Paglia complaint to his motion to dismiss, the Paglia complaint is included in the record and may be considered by this court. See Coghlin Elec. Contrs., Inc. v. Gilbane Bldg. Co., 472 Mass. 549, 552 n.5 (2015); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).

the result of the Sigh hearing, and created a hostile work environment, characterized by harassing electronic mail messages and telephone calls, and poor performance reviews. Paglia also claimed that he had complained to Edwards about "unlawful conduct that occurred prior to and during her tenure as Chair," and that Edwards retaliated by accusing him (through the deputy counsel of EOPSS) of insubordination and performance deficiencies. Paglia further asserted that Edwards had attempted to influence the independence of hearing officer decisions by instituting a regulation permitting SORB to revise or overturn decisions, known internally as the "Paglia Regulation," and hiring a hearing decision editor to "subject the finality of hearing examiner decisions to doubt and ambiguity."

Edwards's termination. According to the amended complaint, on September 15, 2014, Edwards was ordered to attend a meeting the next day at the governor's office, with the general counsel and chief of staff of EOPSS, and Patrick's director of boards and commissions, Kendra Foley. Edwards was not given an explanation for the meeting.

Edwards met with Foley on September 16, 2014. She was joined by Patrick's legal counsel and a representative of human resources from EOPSS. Patrick was not present at this meeting. Foley told Edwards, "As you know, you serve at the Governor's

pleasure. He has decided to replace you as the Chairperson of the Sex Offender Registry Board." Edwards asked Foley if there was "a problem," or if she had done something wrong. Foley replied that Edwards had not done anything wrong, but repeated that her employment was being terminated. To avoid the stigma of being terminated, Edwards asked if she could tender a letter of resignation. Edwards was allowed to resign effective that day.

d. Patrick's statements to the media. The amended complaint further states that Patrick made two statements to the media concerning Edwards's removal as SORB chair. On September 22, 2014, he said during a press conference:

> "The final straw was the settlement of a lawsuit, which happened about not quite a year ago now, that involved some inappropriate, at least, maybe, unlawful, pressuring by the Chair and the Executive Director of a hearing officer to change the outcome of a case. The hearing officer did not ultimately do that. It turns out that the case is the case that arose out of my brother-in-law's experience way back at the beginning of the first campaign when the Republican Party, sorry to say, aided by the [Boston} Herald, nearly destroyed their lives."[6]

On January 2, 2015, Patrick made additional comments to the media concerning his reasons for removing Edwards:

> "You know, people do things like this when they've been, sometimes when they've been called out, and, you

---

[6] Patrick also stated that he had lost confidence in Edwards' ability to lead the SORB for other reasons: " several cases where the [Supreme Judicial Court] has reversed them"; " critici[sm] for not updating their regulations"; and " a number of reports about the work environment not being positive."

know, it's part of the business.  The fact is that she influenced inappropriately, or attempted to influence inappropriately, a hearing officer, and that's a matter of record.  That hearing did involve my brother-in-law, that is true.  We've never made a secret of that, but it's still inappropriate, and that's the reason why I asked for her resignation.

"We can't have officials inappropriately interfering with the independence of hearing officers.  It undermines the whole process whether it involves someone I know or not."

d.  Edwards's complaint.  On December 31, 2014, Edwards filed a complaint in the Superior Court against the Commonwealth, claiming wrongful termination for her removal as SORB chair, and against Patrick individually, alleging that his September 22, 2014 statements to the media "accusing her of wrongdoing" were defamatory.  Thereafter, on March 2, 2015, Edwards filed an amended complaint, adding a second claim of defamation based on Patrick's January 2, 2015, response to media inquiries following the filing of Edwards's initial complaint.

Patrick moved to dismiss the defamation claims on grounds of absolute and qualified or conditional privilege.  A Superior Court judge denied the motion,[7] noting that the matter of an absolute privilege had not been recognized by this court, and determining that Edwards had overcome the qualified privilege by

---

[7] The judge also denied the Commonwealth's motion to dismiss the wrongful termination claim.  The Commonwealth has not appealed from that decision, and the matter has been stayed as to both defendants pending resolution of this interlocutory appeal.

pleading sufficient facts to establish actual malice.  We allowed Patrick's application for direct appellate review.[8]

Discussion.  We review the denial of a motion to dismiss de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). In assuming the facts as alleged, however, "[w]e do not regard as 'true' legal conclusions cast in the form of factual allegations."  Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 39 n.6 (2009).  To survive a motion to dismiss, the facts alleged must "'plausibly suggest[] (not merely be consistent with)' an entitlement to relief."  Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (Twombly). See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 56 (1st Cir. 2012) (court applies Twombly pleading standard in defamation action by isolating and ignoring "actual malice buzzwords").

a.  Absolute privilege.  Patrick argues first that he is immune from Edwards's defamation claims because his statements to the media were made in the discharge of his official duties as governor and thus are, or should be, protected by an absolute

---

[8] The denial of Patrick's motion to dismiss, which raised claims of absolute and qualified privilege, was immediately appealable under the doctrine of present execution.  Visnick v. Caulfield, 73 Mass. App. Ct. 809, 811 n.4 (2009).

privilege.  "An absolute privilege provides a defendant with a complete defense to a defamation suit even if the defamatory statement is uttered maliciously or in bad faith."  Mulgrew v. Taunton, 410 Mass. 631, 634 (1991).  In Massachusetts, the existence of an absolute privilege has been recognized in "comparatively few cases," Vigoda v Barton, 348 Mass. 478, 484 (1965), and has been "limited to cases in which public policy or the administration of justice requires complete immunity."  Ezekiel v. Jones Motor Co., 374 Mass. 382, 385 (1978).  See Sriberg v. Raymond, 370 Mass. 105, 108-109 (1976) (statements by party, counsel or witness made in relation to judicial proceeding); Sheppard v. Bryant, 191 Mass. 591, 592-593 (1906) (statements by witness testifying before legislative committee which were pertinent to questions and subject of examination).

Patrick argues that, as the majority of States to have considered the question have done, we should adopt the Federal standard, which affords certain high-ranking Federal officials absolute immunity from defamation claims based on statements made within the scope of their official duties.  See Spalding v. Vilas, 161 U.S. 483, 498 (1896); 1 Sack on Defamation, Libel, Slander, and Related Problems § 8.2.5 (4th. ed. 2010) (Sack).

The United States Supreme Court has expressed two significant policy reasons for the adoption of an absolute privilege.  See Barr v. Matteo, 360 U.S. 564, 569-576 (1959).

First, Federal officials should be able to discharge their duties uninhibited by the fear and distraction of lawsuits. Id. at 571-573. Second, an absolute privilege furthers free speech by allowing Federal officials to speak with complete candor concerning matters of public importance. Id. at 577 (Black, J., concurring). The Court has recognized that application of an absolute privilege may result in an injustice to defamed citizens left without a remedy, but has deemed this a necessary sacrifice for the "greater good" given the specific positions at issue. Id. at 576.

As Patrick points out, consistent with the holding in Barr, the Restatement (Second) of Torts § 591 (2002) provides for an absolute privilege for defamation claims brought against high-ranking Federal and State executive officers, including governors or State "superior executive officers." According to the Restatement, "[a]n absolute privilege to publish defamatory matter concerning another in communications made in the performance of his official duties exists for (a) any executive or administrative officer of the United States; or (b) a governor or other superior executive officers of the state." Id.

A majority of States have been persuaded by this reasoning, and have adopted an absolute privilege which shields the governor, or cabinet-level State officials, from defamation

claims for statements made in the course of their official duties.  See Sack, supra at § 8.2.5.  See, e.g., Blair v. Walker, 64 Ill. 2d 1, 6-11 (1976) (adopting absolute immunity to shield Illinois governor from defamation claim); Jones v. State, 426 S.W.3d 50, 55-56 (Tenn. 2013) (cabinet-level State officials such as commissioner of Department of Correction immune from defamation claims arising from their official duties); Salazar v. Morales, 900 S.W.2d 929, 932 (Tex. App. 1995) (Texas Attorney General had absolute privilege to publish defamatory statements in communications associated with official duties).

Nonetheless, other jurisdictions have recognized strong, countervailing considerations against extending an absolute privilege to a State governor and cabinet-level State officials. See e.g., Clark v. McGee, 49 N.Y.2d 613, 618 (1980) ("Public office does not carry with it a license to defame at will, for even the highest officers still exist to serve the public, not to denigrate its members").  Chief Justice Earl Warren, dissenting in Barr, observed that the public should have a right to criticize government officials without being "subjected to unfair -- and absolutely privileged -- retorts."  Barr, 360 U.S. at 584.  Consistent with this view, a substantial minority of State courts that have considered the issue have concluded that a qualified or conditional privilege is sufficient to protect high-ranking public officials from liability where their

statements are made in good faith and without malice. See, e.g., Aspen Exploration Corp. v. Sheffield, 739 P.2d 150, 161 (Alaska 1987) (application of absolute privilege to defamation suit against governor "would do little more than protect unprivileged defamatory statements leaving injured plaintiff without a remedy"); Goddard v. Fields, 214 Ariz. 175, 178-180 (2007) (court declined to grant Attorney General absolute immunity to defend comments made in press release).

As the motion judge noted in his decision, this court has not decided whether an absolute privilege shields the governor, or other high-ranking State officials, from liability for all defamation claims arising out of statements made in the performance of their official duties. See Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 630 n.10 (2012). We considered the issue in considerable depth in two cases, Mulgrew, 410 Mass. at 634-635, and Vigoda, 348 Mass. at 483-484. In Mulgrew, supra at 634, a police chief argued that he had an absolute privilege to defend public comments he made regarding a police officer's fitness for duty. In Vigoda, supra at 481, 483, a social worker brought a defamation claim against the superintendent of Boston State Hospital, in connection with written evaluations, and the superintendent claimed that his official statements should be protected by an absolute privilege. In both cases, we declined to apply an absolute

privilege because a qualified privilege in those circumstances was sufficient to shield the public official from liability. See Mulgrew, supra at 635; Vigoda, supra at 484.

Given the conflicting policy considerations discussed above, it is more prudent to examine whether Edwards pleaded sufficient facts to state a cognizable claim for defamation.  We conclude that she did not.

b.  Adequacy of the complaint.  Edwards was required to allege sufficient facts to establish that:  (1) Patrick made a statement concerning her to a third party; (2) the statement was defamatory such that it could damage her reputation in the community; (3) Patrick was at fault for making the statement; and (4) the statement caused her to suffer economic loss or was actionable without economic loss.  Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-630 (2003).  In addition, as a public figure, Edwards is required to allege that Patrick made a false and defamatory statement with knowledge that it was false or reckless disregard of its falsity.[9]  See New York Times Co. v. Sullivan, 376 U.S. 254, 279-280 (1964); id. at 270 (First

---

[9]  Patrick's status as governor also provides an independent basis for the imposition of the actual malice standard.  Edwards brought her defamation claim against Patrick for statements made while Patrick was acting within the scope his official duties. He was protected, at a minimum, by a qualified privilege when speaking to the media about Edwards's removal.  See Mulgrew v. Taunton, 410 Mass. 631, 635 (1991); Vigoda v. Barton, 348 Mass. 478, 484 (1965).

Amendment to United States Constitution protects debate on public issues even where debate includes "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials").  See also Murphy v. Boston Herald, Inc., 449 Mass. 42, 48 & n.8 (2007) (discussing application of actual malice requirement to defamation action brought by judge); Rotkiewicz v. Sadowsky, 431 Mass. 748, 755 (2000) ("As New York Times Co. v. Sullivan[, supra,] and subsequent cases have made clear, a plaintiff who is a public official may not recover damages for defamation related to his or her public office unless the plaintiff proves by clear and convincing evidence that the defendant made the false statement with actual malice").

The actual malice standard requires the public figure to prove that the statement was made either with knowledge that it was false, or with reckless disregard as to whether it was false.  See Rotkiewicz, 431 Mass. at 755.  Thus, to survive a motion to dismiss, Edwards must allege sufficient facts to establish that Patrick knew the statements were false, or acted with reckless disregard for their truth or falsity.  See Vigoda, 348 Mass. at 485 ("Where the official believes the matter to be true . . . and has not acted with actual malice . . . or with reckless indifference to the rights of the individual citizen, his conditional privilege is not abused" [citations omitted]). Reckless disregard requires more than negligence; a plaintiff

must prove that the individual making the alleged defamatory statement "entertained serious doubts as to the truth" of the statement.  Murphy, 449 Mass. at 48, quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968).  The actual malice test is subjective.  "That information was available which would cause a reasonably prudent man to entertain serious doubts is not sufficient.  In order to negate the privilege, the jury must find such doubts were in fact entertained by the defendant."  Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 867-868 (1975).  See Gertz v. Robert Welch Inc., 418 U.S. 323, 334 n.6 (1974).

Because it is rare to garner direct evidence of an individual's state of mind, a plaintiff may rely on circumstantial evidence to prove that a defendant had actual knowledge that the statements were false, or had serious doubts about their accuracy.  Levesque v. Doocey, 560 F.3d 82, 90 (1st Cir. 2009).  See Bose Corp. v. Consumers Union of U.S., Inc., 692 F.2d 189, 196 (1st Cir. 1982), aff'd, 466 U.S. 485 (1984) (subjective determination whether defendant in fact entertained serious doubts about truth of statement may be established by inference "as it would be very rare for a defendant to admit such doubts").  See also Murphy, 449 Mass.  at 57-58 (determination of defendant's subjective state of mind may be made based on circumstantial evidence).

Edwards advances three distinct theories to support her claim that the amended complaint alleged sufficient facts to establish actual malice. First, she points to a Patrick administration official's assurance that she had done nothing wrong as indicating the falsity of Patrick's subsequent statements accusing her of wrongdoing. Second, she notes that the Paglia lawsuit, which Patrick referenced in his comments, did not accuse Edwards of pressuring Paglia to change his decision. Third, Edwards contends that Patrick's spite and ill will toward her establish actual malice. We address each argument in turn.[10]

The amended complaint asserts that Edwards and Foley, Patrick's director of boards and commissions, met on September 16, 2014. During that meeting, Foley informed Edwards: "As you know, you serve at the Governor's pleasure. He has decided to replace you as Chairperson of the Sex Offender Registry Board." Responding to Edwards's inquiry about the reasons for her removal, the complaint alleges that Foley

---

[10] Edwards also claims that inconsistencies between Patrick's September 22, 2014, statement and his January 2, 2015, statement demonstrate that he lied about her removal. This argument is without merit. Patrick's January 2, 2015, remarks focused on the primary allegation that Edwards improperly sought to influence the independence of a hearing officer. His failure to mention the purported systemic difficulties at SORB, as he had in his statement in September, as a further reason to remove Edwards from her position as chair did not constitute evidence that he believed that Edwards's job performance had been satisfactory.

assured Edwards that she had not done anything wrong. Yet, after Edwards's meeting with Foley, Patrick twice informed the media that Edwards was removed from her position for interfering with the independence of a hearing officer.

Edwards concedes that Foley's statements are not directly attributable to Patrick. She contends, however, that Foley's assurance that Edwards had done nothing wrong is evidence of what Patrick actually believed. Edwards urges us to draw the following inferences: (1) Patrick spoke with Foley before the September 16 meeting; (2) Patrick informed Foley that he had the authority to replace Edwards in the exercise of his discretion; (3) Patrick told Foley that Edwards had done nothing wrong; and (4) Patrick accused Edwards of interfering with the independence of a SORB hearing officer although he knew she had done nothing wrong. All of these inferences strung together, Edwards argues, are sufficient to prove that Patrick's subsequent statements that he removed Edwards for interfering with a hearing officer were knowingly false or were made in reckless disregard of their falsity.

This attempt to ground the allegation of actual malice on a statement purportedly made by Foley at the termination meeting does not satisfy the pleading standard set forth in Iannacchino, 451 Mass. at 636. The theory that Foley's statement somehow reflected Patrick's personal view of Edwards's job performance

would require a fact finder to jump from one inference to another absent any of the necessary factual support. Edwards's assertions regarding Patrick's likely state of mind, based on Foley's alleged statement to Edwards, are too speculative to support a claim of actual malice. See Shay v. Walters, 702 F.3d 76, 83 (1st Cir. 2012) ("inquiring court need not give weight to bare conclusions, unembellished by pertinent facts"); Biro v. Condé Nast, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015) ("Not only is '[p]roving actual malice a heavy burden, . . . but in the era of [Ashcroft v. Iqbal, 556 U.S. 662 (2009),] and Twombly, pleading actual malice is a more onerous task as well" [quotations and citation omitted]). See also Sanford, Libel and Privacy § 13.3 at 13-62 (2d ed. Supp. 2017) (noting difficulty in pleading actual malice in light of heightened pleading standards); 2 Sack on Defamation, Libel, Slander, and Related Problems, § 16:2.2 (noting courts' "insistence that litigation in which 'actual malice' must be established by the plaintiff provides no exception to the Iqbal and Twombly pleading requirements").

In her second argument, Edwards contends that the allegations in the amended complaint are sufficient to establish actual malice because it is reasonable to infer that Patrick read the complaint in the Paglia action, and knew that the asserted pressure brought to bear on Paglia occurred before

Edwards was appointed to be SORB chair. This inference, however, is not supported by Edwards's own allegations in the amended complaint concerning the Paglia lawsuit, nor by the plain language in the Paglia complaint that was submitted as an exhibit to the Superior Court. In her amended complaint, Edwards acknowledges that Paglia did bring a complaint against her for retaliation, and that he filed that claim after Edwards discussed the Sigh classification decision with him, and stated that she disagreed with his decision because "rape is rape." Moreover, the Paglia lawsuit described in some detail Edwards's alleged role in the Sigh matter. Paglia's complaint clearly alleged that Edwards pressured him to withdraw his classification decision and to classify Sigh as a sex offender under Massachusetts law, and retaliated against him for his failure to do so. The complaint also alleged that Edwards "verbally berated" Paglia, "at one point making him so nervous and panicked that [he] had to go to the hospital." Accordingly, no view of the allegations in the Paglia lawsuit would support a claim that Patrick was on notice, after reading the complaint, that Edwards did nothing wrong.

Edward's third theory concerning the sufficiency of her complaint is that Patrick's ill will and spite over her role in his brother-in-law's case support a claim of actual malice. In this view, Patrick's statements were motivated by hostility

toward Edwards for having "nearly destroyed the lives of his sister and brother-in-law."  Thus, Patrick's statements to the media accusing Edwards of wrongdoing were strictly personal, meant to harm Edwards's reputation, and served no public purpose.

Evidence of ill will or spite is insufficient, standing alone, to establish actual malice.  In Rotkiewicz, 431 Mass. at 755, quoting Stone, 367 Mass. at 867, we held:

> "In the context of defamation, the term 'actual malice' does not mean the defendant's dislike of, hatred of, or ill will toward, the plaintiff.  Rather, actual malice means that the 'defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false.'"

Regardless of Patrick's alleged spiteful, negative feelings toward Edwards, which we take, as we must, as true for purposes of considering the sufficiency of the complaint, Edwards was required to allege specific facts to prove that Patrick made his statements to the media with knowledge of their falsity or with reckless disregard of their truth or falsity.  That Patrick might have harbored ill will toward Edwards for "nearly destroy[ing]" the lives of some members of his family does not substitute for proof of actual malice.  See Beckley Newspapers Corp. v. Hanks, 389 U.S. 81, 82 (1967) ("personal spite, ill will or a desire to injure plaintiff" is not equivalent of actual malice).

<u>Order denying motion to dismiss reversed</u>.