John P. **MELTZER**, Julee Mitchell, Plaintiffs,

v.

Ralph **GRANT**, Epstein Becker & Green, P.C., Defendants.

No. Civ.A.2000–11830RBC.[1]

United States District Court, D. Massachusetts.

March 28, 2002.

---

1. With the parties' consent, on October 30, 2001, this case was referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Joanne D'Alcomo, Schneider, Reilly, Zabin & Costello, Boston, MA, for Plaintiffs.

Michael J. Tuteur, Epstein, Becker & Green, P.C., John J. Rosenberg, Epstein, Becker & Green, P.C., Carrie J. Fletcher, Epstein Becker & Green, P.C., Joseph H. Reinhardt, McCabe Brown & Davis, Edwin A. McCabe, The McCabe Group, A Professional Corporation, Robert T. Norton, The McCabe Group, A Professional Corporation, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER ON DEFENDANT'S RENEWED MOTION TO DISMISS (# 35).

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

On September 11, 2000, this civil action was removed from the Superior Court of the Commonwealth of Massachusetts pursuant to 28 U.S.C. § 1441. Plaintiffs Jack Meltzer ("Meltzer") and Julee Mitchell ("Mitchell") (collectively, "plaintiffs") instituted the original action against defendant Ralph Grant ("Grant"). On September 22, 2000, plaintiffs amended their complaint to include as a defendant Epstein, Becker & Green, P.C. ("Epstein Becker" or "defendant" or "the law firm"). Approximately two weeks later, both defendants moved to dismiss the complaint. Thereafter plaintiffs filed an opposition to the motion to dismiss and defendants filed a reply brief to same.

After some discovery was undertaken and several conferences were held, plaintiffs were granted leave to file an amended complaint in July of 2001. The claims alleged in the eleven count Amended and Supplemented Complaint (Breach of Contract against Grant (Count 1), Fraud/Misrepresentation against Grant (Count 2), Breach of Fiduciary Duty against Grant (Count 3), Aiding and Abetting against Epstein Becker (Count 4), Conversion against Grant (Count 5), Conspiracy against Epstein Becker (Count 6), Intentional Interference with Contractual and Advantageous Business Relations against Grant (Count 7), Conspiracy against Grant (Count 8), Intentional Infliction of Emotional Distress against Grant and Epstein Becker (Count 9), Defamation against Grant (Count 10) and Promissory Estoppel against Grant (Count 11)) all relate to or arise out of a business partnership for an internet-based environmental software company originated by Meltzer and Mitchell and financed by Grant.

In lieu of answering the Amended and Supplemented Complaint, Grant and Epstein Becker filed a renewed motion to dismiss pursuant to Rule 12(b)(6), Fed. R.Civ.P., for failure to state a claim upon which relief can be granted (# 35) together with a memorandum in support (# 36). In turn, the plaintiffs have filed a memorandum in opposition to the dispositive motion (# 41). Following the submission of the defendants' reply memorandum (# 47), Grant on October 19, 2001 was dismissed from this action without prejudice (# 51). At this juncture, the motion to dismiss is in a posture for resolution of the claims that relate to defendant Epstein Becker, those being Counts 4, 6 and 9.

## II. THE STANDARD

The standard to be applied when deciding a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., has often been repeated. It is incumbent upon the court to "accept the complaint's allegations as true, indulging all reasonable inferences in favor of [the plaintiff]." *Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1st Cir.1997); *Hogan v. Eastern Enterprises/Boston Gas*, 165 F.Supp.2d 55, 57 (D.Mass.2001). Indeed, more than forty years ago the Supreme Court declared that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). That general proposition notwithstanding, "bald assertions, . . . subjective characterizations, optimistic predictions, or problematic suppositions" need not be credited. *United States v. AVX Corp.*, 962 F.2d 108, 115 (1 Cir., 1992) (internal quotations omitted).

## III. THE FACTS

The place to begin is with an examination of the allegations of the Amended and Supplemented Complaint. Meltzer and Mitchell are two individuals who together possess about thirty-five years experience working in the environmental field. (Amended and Supplemental Complaint # 37 ¶ 6) They conceived the idea of making a computer software program to be available via the internet on a paid basis, tailored for managing and tracking the voluminous amounts of data needed to comply with federal, state and local environmental regulations. (# 37 ¶ 8) In 1998, plaintiffs, in an effort to finance their venture, formed a limited liability company with Grant called Phoenix Environmental, LLC wherein each held an equal one-third interest. (# 37 ¶ 9) Pursuant to the agreement Mitchell and Meltzer ran and operated the business on a day-to-day basis out of the apartment in which they lived, remaining in close contact with Grant regarding the business. (# 37 ¶¶ 10–11)

Due to the growth in business, Grant, having left his previous employment, began working with Mitchell and Meltzer in September 1999 and was given the title of Chief Executive Officer. (# 37 ¶¶ 13–14) In December 1999, Meltzer, Mitchell and Grant formally incorporated a new corporation called "Epasys, Inc." ("Epasys"). (# 37 ¶ 15) Further, pursuant to an agreement by all parties, Grant contributed additional money and increased his interest to 42%, with Meltzer and Mitchell each giving up an equal portion of their 33 1/3 interests. (# 37 ¶ 16)

As the business prospects grew and additional office space was rented in Concord, Massachusetts and in New Jersey, Grant acted to isolate plaintiffs from the development of the software, which was called "Environmental Office," demanding that plaintiffs stay away from new employees hired to work on the project. (# 37 ¶¶ 17–19) Grant kept plaintiffs out of meetings with the head of marketing who was developing ties with prospective clients and sources of venture capital and turned down an interested venture capital firm without consulting plaintiffs. (# 37 ¶¶ 20–21)

Grant at times created reasons to blame the plaintiffs for things that irritated him and with a volatile temper, aimed his outbursts at them. He also provoked unjustified disputes with the plaintiffs by agreeing to arrangements and then denying such agreements. (# 37 ¶¶ 22–23) Grant intentionally undermined plaintiffs and aroused discord and discontent among the employees by questioning them about company issues. (# 37 ¶ 24)

Grant secretly met with McDermott Will & Emery, even though they were the law

firm hired by Grant, Mitchell and Meltzer to form Epasys and remain as corporate counsel. (# 37 ¶ 25) Grant used their representation in his efforts to further gain sole control of Epasys. (# 37 ¶ 25) In August 2000, Grant filed a statement signed under oath with the Massachusetts Secretary of State, stating that he was the sole officer and director of Epasys. (# 37 ¶ 26) Grant further claimed that he was the president, secretary and treasurer, ignoring Mitchell and Meltzer's positions. (# 37 ¶ 27) Grant took action to exercise sole control of Epasys, preventing Mitchell, the other director, from participating in corporate decision making and denying him access to corporate information. (# 37 ¶¶ 28–30) Grant changed the locks at Epasys' headquarters in Concord, Massachusetts for the sole purpose of keeping out Meltzer and Mitchell. (# 37 ¶ 26)

Grant declined a proposal by plaintiffs to attempt to resolve the dispute with a professional mediator. (# 37 ¶¶ 32–33) Grant responded to this request by immediately firing Mitchell and Meltzer as employees without any severance. At this point he retained the defendant law firm, Epstein Becker. A letter written by Epstein Becker to plaintiffs' counsel forms the basis of the plaintiffs' claims against the law firm.

The letter is dated September 1, 2000 and is signed by Attorney Michael J. Tuteur of Epstein, Becker and reads in pertinent part:

> As noted above, Ms. Mitchell's and Mr. Meltzer's employment with the Company [Epasys] has been terminated, effective today. In the interest of permitting Epasys to move forward—and in recognition of the fact that Ms. Mitchell and Mr. Meltzer appear to lack the financial resources to reimburse the Company for even a fraction of their misap-

propriations—Mr. Grant is prepared to do the following: Mr. Grant, for himself and the Company, will forbear from bringing either civil *or criminal claims* against Ms. Mitchell and Mr. Meltzer if, but only if, on or before September 7, 2000, Ms. Mitchell and Mr. Meltzer: (1) acknowledge and agree that their employment with the Company has been terminated, effective today; (2) acknowledge and agree that they hold no position as either officer or director of the Company; (3) disclaim an interest in any assets of the Company, and (4) return all the misappropriated items forthwith. Ms. Mitchell and Mr. Meltzer have until 4:00 p.m. on Thursday, September 7, 2000, to accept this proposal, after which it will be irrevocably withdrawn.

> If Ms. Mitchell and Mr. Meltzer fail to accept the foregoing proposal, Mr. Grant's course of action will be quite simple. . . .

> \*　　\*　　\*　　\*　　\*　　\*

> . . . Mr. Grant will vigorously enforce his rights as shareholder of the Company. Among other things, Mr. Grant will bring derivative claims against Ms. Mitchell and/or Mr. Meltzer for their self-dealing, *embezzlement, misappropriation of assets* and mismanagement. *Mr. Grant will also inform the appropriate authorities concerning Ms. Mitchell's and Mr. Meltger's improper activities.*

Amended and Supplemented Complaint,[2] # 37, ¶ 34 (emphasis supplied).

## IV.　DISCUSSION

Epstein Becker contends that the claims contained in Counts 4, 6 and 9 alleging

---

2.　The remaining factual allegations contained in paragraphs 35–60(c) relate only to the

claims alleged against Grant.

Intentional Infliction of Emotional Distress, Conspiracy and Aiding and Abetting are subject to dismissal because the act of sending the September 1, 2000 letter, upon which the claims are based, was privileged under Massachusetts law under the so-called "litigation privilege." To determine this issue, a description of that privilege is in order.

"It is well-settled that an attorney's statements are privileged 'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conference and other communications preliminary to litigation.'" *Lucas v. Newton–Wellesley Hospital,* 2001 WL 834618, *2 (Mass.Super. July 20, 2001), citing *Sriberg v. Raymond,* 370 Mass. 105, 109, 345 N.E.2d 882 (1976). This doctrine was motivated by " 'the public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients.'" *Lucas,* 2001 WL 834618, *2 quoting *Sriberg* at 884[sic]. The *Lucas* Court stated that the rule exists out of the fear of a flood of actions being brought against attorneys honestly performing their duties. *Lucas,* 2001 WL 834618, *3.

Plaintiffs argue that issues of fact exist as to whether the law firm's letter ". . . relate[d] to a proceeding which [was] contemplated in good faith and which is under serious consideration." *Sriberg,* 370 Mass. at 109, 345 N.E.2d at 884. In the *Sriberg* case, the Court ruled that only in such circumstances ". . . the privilege should attach . . ." and that application of the privilege ". . . is subject to the provisions that such proceeding is not to be employed as a shield of immunity for defamation where there is not serious consideration of suit." *Id.* If *Sriberg* is still the law of Massachusetts, plaintiffs would have a point, for in that case, the Court indicated that there were circumstances when the privilege would apply and when it would not depending on the facts. It would apply "[w]here a communication to a prospective defendant relates to a proceeding which is contemplated in good faith and which is under serious consideration," *Sriberg* 370 Mass. at 109, 345 N.E.2d at 884, and does not apply either when a proceeding is not contemplated in good faith and/or is not under serious consideration.

It is important to note that this qualification applies only to statements *preliminary* to a judicial proceeding. The language comes from the Comment (e) to § 586 of the Restatement (Second) of Torts (1976) which reads:

> As to communications preliminary to a proposed judicial proceeding the rule [of absolute privilege] stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

While the Restatement states the rule as providing an absolute privilege against claims for defamation, in Massachusetts the rule has been extended to provide an absolute immunity for many other torts, *see Lucas,* 2001 WL 834618, *2–3, because the policy behind the absolute privilege " ' "would be severely undercut if the absolute privilege were to be regarded as less than a bar to *all actions* arising out of the conduct of parties and/or witnesses in connection with a judicial proceeding." ' " *Lucas,* 2001 WL 834618, *3 (emphasis in original) *quoting Sullivan v. Birmingham,* 11 Mass.App.Ct. 359, 368, 416 N.E.2d 528, 533 (1981). " 'If the policy . . . is really to mean anything then we must not permit

its circumvention by affording an almost equally unrestricted action under a different label.'" *Sullivan v. Birmingham,* 11 Mass.App.Ct. 359, 368, 416 N.E.2d 528, 533–34 (1981) *quoting Rainer's Dairies v. Raritan Valley Farms, Inc.,* 19 N.J. 552, 564, 117 A.2d 889 (1955). "The privilege is absolute." *Jane Doe v. Nutter, McClennen & Fish,* 41 Mass.App.Ct. 137, 140, 668 N.E.2d 1329, 1332, *rev. denied,* 423 Mass. 1111, 672 N.E.2d 539 (1996) (citations omitted). This privilege has been extended not only to defamatory statements, but to claims based on false or malicious statements, intentional infliction of emotional distress (*see Lucas,* 2001 WL 834618, *3), negligence, and violations of the Massachusetts Civil Rights Act (*see Doe,* 41 Mass. App.Ct. at 141, 668 N.E.2d at 1333). "To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory." *Doe,* 41 Mass.App.Ct. at 141, 668 N.E.2d at 1333 (citations omitted).

So the issue is whether, under Massachusetts law, the absolute privilege for "... communications preliminary to a proposed judicial proceeding" remains subject to the proviso set forth in the Restatement and the *Sriberg* case that the privilege only applies when the communication "... relates to a proceeding which is contemplated in good faith and which is under serious consideration." *Sriberg,* 370 Mass. at 109, 345 N.E.2d at 884. The answer to that question is somewhat difficult to discern.

An initial point to make is that the limitation is somewhat different when the statements or communications are made in the course of litigation which has already commenced. In such cases, the issue is whether the statements are "pertinent" to the litigation, *Blanchette v. Cataldo,* 734 F.2d 869, 877 (1 Cir., 1984), or, in the words of the Restatement, if the statements have "some relation to the proceeding." Restatement (Second) of Torts, § 586 (1976). This limitation has remained a part of Massachusetts law. In the *Sullivan* case, the Appeals Court wrote that although the phrase "pertinent to the proceedings" was not to be read narrowly, nonetheless:

> The privilege, however, cannot be exploited as an opportunity to defame with immunity, because it is available only when the challenged remarks are relevant or pertinent to the judicial proceedings.

*Sullivan,* 11 Mass.App.Ct. at 362, 416 N.E.2d at 530–1 (citations omitted).

In addition, the Appeals Court has held that:

> The litigation privilege recognized in our cases ... would not appear to encompass the defendant attorneys' conduct in counseling and assisting their clients in business matters generally.

*Kurker v. Hill,* 44 Mass.App.Ct. 184, 192, 689 N.E.2d 833, 836 (1998) (footnote omitted).[3]

With respect to the limitations on the communications preliminary to a proposed judicial proceeding, it is not so clear that the limitations remain. In the *Doe* case, an attorney had written a 30–day demand letter pursuant to Mass.Gen.L. c. 93A al-

---

**3.** At the hearing on the motion to dismiss, plaintiffs' counsel made reference to other acts which the law firm took, apart from writing the September 1, 2000 letter, which involved business advice and which evidenced the law firm's participation in Grant's tortious conduct. Specific mention was made of the formation of a new corporation, Data Coalitions, Inc., which was allegedly part of the scheme. (# 37, ¶ 41) The problem with this argument is that nowhere in the Amended and Supplemented Complaint is there any allegation that the law firm participated in the formation of the corporation. The sole basis for liability alleged is the writing of the September 1, 2000 letter.

leging that the his client had been sexually assaulted during a visit to a medical facility. *Doe,* 41 Mass.App.Ct. at 137, 668 N.E.2d at 1331. The medical facility's attorney responded denying that any assault had occurred and further charging that the demand letter was defamatory, noting that he believed that the action of the patient in accusing doctors at the facility of "sexual and professional misconduct is actionable." *Doe,* 41 Mass.App.Ct. at 138, 668 N.E.2d at 1331. On the basis of the attorney's statements in this response to her demand letter, the patient sued both the attorney and his law firm under a number of different theories.

In response to the assertion by the attorney and the law firm of the litigation privilege, the plaintiff argued that the privilege did not apply because the communication "... did not relate to a legal proceeding which was contemplated in good faith and which was under serious consideration." *Doe,* 41 Mass.App.Ct. at 140, 668 N.E.2d at 1332. The reason was that no legal proceeding could be brought against the patient or her attorney for statements made in the demand letter because those statements themselves were privileged. In other words, the patient's attorney argued that there was no way a legal proceeding could be contemplated in good faith or given serious consideration when the legal proceeding would be on the basis of a statement which was privileged and could not form the basis of liability. *Id.*

The Appeals Court, faced with this argument, wrote:

> The plaintiffs, however, misconstrue the privilege which attaches to statements made by an attorney "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Sriberg v. Raymond,* 370 Mass. at 109, 345 N.E.2d 882. The privilege is absolute. *Theran*

*v. Rokoff,* 413 Mass. at 591–592, 602 N.E.2d 191; *Sullivan v. Birmingham,* 11 Mass.App.Ct. 359, 361, 416 N.E.2d 528 (1981). An absolute privilege provides a complete defense even if the offensive statements are uttered maliciously or in bad faith. *Correllas v. Viveiros,* 410 Mass. 314, 319, 572 N.E.2d 7 (1991); *Mulgrew v. Taunton,* 410 Mass. 631, 634, 574 N.E.2d 389 (1991).

*Doe,* 41 Mass.App.Ct. at 140, 668 N.E.2d at 1332–3.

If the privilege applies even if the communication is made in bad faith, as the *Doe* case holds, what is left of the condition that the privilege does not apply if there is no legal proceeding which is contemplated in good faith? Surely if a communication is privileged even if made in bad faith and with malice, the privilege cannot be lost if a legal proceeding is not contemplated in good faith.

However, a close reading of the Appeals Court's decision indicates that it was based on a finding that a *response* to a demand letter is privileged because it was "preliminary to litigation threatened by the plaintiffs." *Doe,* 41 Mass.App.Ct. at 141, 668 N.E.2d at 1333. In other words, in *Doe,* the Appeals Court was dealing with a particular scenario in which the allegedly offending letter was written by an attorney for the defendants in reply to a letter demanding relief from plaintiff and threatening litigation if relief was not forthcoming. What the Court seems to be saying is that in such situations, the reply is not subject to the test of whether the defendant was contemplating litigation in good faith and that litigation was under serious consideration. Rather, the test which is applied is the test applicable during the course of litigation, i.e., whether the communication was "pertinent" to the proceedings, or, in this case, "pertinent" to the demand which was made.

Thus, I do not find that the Appeals Court in *Doe* changed the law by eliminating the limitation contained in the *Sriberg* case and the Restatement when the communication is preliminary to a judicial proceeding. The opinion is best understood if it is limited to the factual scenario which was presented in the case.

There may be some basis for an argument that the test was changed in the words used by the SJC ten years ago in the case of *Theran v. Rokoff*, 413 Mass. 590, 602 N.E.2d 191 (1992). In that case, the SJC described the *Sriberg* test for the privilege as follows:

> We have held that an attorney is absolutely privileged in sending an allegedly defamatory communication to a person against whom, *the communication indicates*, the attorney is threatening to bring a law suit.

*Theran v. Rokoff*, 413 Mass. 590, 591, 602 N.E.2d 191, 193 (1992) (citing *Sriberg* ) (emphasis added).

It should be noted that there is no qualification that the threatened lawsuit has to be contemplated in good faith and under serious consideration. Further, the statement would indicate that whether or not the communication is made preliminary to litigation is determined by the content of the communication itself, not on whether the proposed litigation was contemplated in good faith or under serious consideration. However, it does not appear from the opinion that any issue was raised by the parties as to whether the communication was preliminary to a lawsuit which

was contemplated in good faith and under serious consideration.

Having said all of this, I have serious doubts that the SJC, if faced with the question, would hold that a communication threatening suit was privileged even if litigation was not contemplated in good faith or was not under serious consideration. I note that in *Doe*, in which the Appeals Court held that "an absolute privilege provides a complete defense even if the offensive statements are uttered maliciously or in bad faith", *Doe*, 41 Mass.App.Ct. at 140, 668 N.E.2d at 1333, the Court cited *Correllas v. Viveiros*, 410 Mass. 314, 319, 572 N.E.2d 7 (1991) and *Mulgrew v. Taunton*, 410 Mass. 631, 634, 574 N.E.2d 389 (1991). Neither of these cases dealt with communications preliminary to the commencement of judicial proceedings. In *Correllas*, the SJC was referring to a communication made *during* judicial proceedings, not to communications made *preliminary to* the institution of judicial proceedings.[4] Obviously, if the statement is made during a judicial proceeding, there is no need to inquire as to whether the judicial proceeding was contemplated in good faith or under serious consideration. The citation to the *Mulgrew* case is to a definition of an absolute privilege[5] in a case in which the question was whether a public official who made a statement in the course of his official duties was entitled to an absolute or conditional privilege. The SJC found that a conditional privilege existed, but the important point is that the case had noth-

---

**4.** The statement by the SJC in *Correllas* is that "[s]tatements made *in the course of a judicial proceeding* which pertain to that proceeding are, of course, absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith." *Correllas*, 410 Mass. at 319, 572 N.E.2d at 10 (emphasis supplied). In addition, in *Correllas*, the SJC decided that statements by witnesses to police reporting criminal activity are abso-

lutely privileged. *Id.*, 410 Mass. at 320, 572 N.E.2d at 11.

**5.** The statement by the SJC in *Mulgrew* is that "[a]n absolute privilege provides a defendant with a complete defense to a defamation suit even if the defamatory statement is uttered maliciously or in bad faith." *Mulgrew*, 410 Mass. at 634, 574 N.E.2d at 391 (citation omitted).

ing to do with communications made preliminary to a judicial proceeding.

■ Thus, I conclude that if faced with the question, the SJC would continue to adhere to the test set forth in the *Sriberg* case that an absolute privilege applies to communications made preliminary to proposed judicial proceedings if judicial proceedings are contemplated in good faith and under serious consideration.

The plaintiffs dispute that at the time the letter was written that any litigation was contemplated in good faith or was under serious consideration. *See* # 41, p. 25. There is a basis for the plaintiffs' belief. The communication threatens criminal prosecution[6] which, evidently, never materialized. This, in and of itself, is a basis for challenging whether the other threatened action, civil litigation, was contemplated in good faith and/or was seriously considered.

■ In these circumstances, the matter is not properly resolved on a motion to dismiss. It is to be recalled that in ruling on a motion to dismiss on the basis that challenged conduct was privileged, the motion must be based on a contention the complaint "on its face" supports the application of the privilege. *Kipp v. Kueker,* 7 Mass.App.Ct. 206, 210, 386 N.E.2d 1282, 1285 (1979). And in deciding this issue, " 'all allegations [of the complaint] are to be taken as true, and the inferences to be drawn therefrom should be in favor of the pleader.' " *Kipp,* 7 Mass.App.Ct. at 210, 386 N.E.2d at 1285 *quoting from Romano v. Sacknoff,* 4 Mass.App.Ct. 862, 357

N.E.2d 781 (1976). It is also to be recalled that one asserting a privilege has the burden of establishing the entitlement to the privilege. Thus, a motion to dismiss on the grounds that the acts complained of were privileged will only succeed when the entitlement to the privilege is demonstrated by the complaint itself, taking all allegations of the complaint as true and drawing all reasonable inferences in favor of the plaintiffs. If the complaint does not support the application of the privilege, the matter may be resolved on a well-pleaded motion for summary judgment, *Kipp,* 7 Mass.App.Ct. at 213, fn. 7, 386 N.E.2d at 1287, fn. 7, or, failing that, at trial. *Zortman v. Bildman,* 1999 WL 1318959, *9 (Mass.Super., 1999).

In sum, viewing all the allegations of the complaint as true, and drawing all reasonable inferences from the allegations in favor of the plaintiffs, Epstein, Becker has not established that its acts of drafting and sending the letter were privileged because they were taken at a time when litigation was contemplated in good faith and under serious consideration.[7]

## V. CONCLUSION AND ORDER

For the reasons stated, it is ORDERED that the Defendant's Renewed Motion to Dismiss (# 35) be, and the same hereby is, DENIED without prejudice to filing a well pleaded motion for summary judgment in which the law firm seeks a ruling by the Court that it has established its entitlement to the privilege. If the plaintiffs' opposition indicates that there is a genuine issue of material fact on the question, the

---

**6.** Indeed, plaintiffs allege in Counts 4, 6 and 9 of the Amended and Supplemented Complaint that in sending the letter threatening criminal prosecution if Grant's demands were not met, Epstein, Becker committed the crime of extortion in violation of Mass.Gen.L. c. 265, § 25. Applying the words of the statute, as interpreted by the SJC, to Epstein, Becker's letter, the allegation is not baseless.

**7.** In judging whether the law firm acted in good faith, account can also be taken of the notion that sending the letter was a violation of the Massachusetts Rules of Professional Conduct which forbids a lawyer from "threaten[ing] to present criminal ... charges solely to obtain an advantage in a private civil matter." Mass.R.Prof.Cond. 3.4(h).

Court will consider conducting an evidentiary hearing to resolve those factual differences.