John P. MELTZER and Julee
Mitchell, Plaintiffs,

v.

EPSTEIN BECKER & GREEN,
P.C., Defendant.

No. CIV.A.2000–11830–RBC.[1]

United States District Court,
D. Massachusetts.

Dec. 5, 2002.

1. With the parties' consent, this case has been referred and reassigned to the undersigned for all purposes including trial and the entry of judgment pursuant to 28 U.S.C. § 636(c).

Joanne D'Alcomo, Schneider, Reilly, Zabin & Costello, Boston, MA, for Plaintiffs.

Paula M. Bagger, Majorie S. Cooke, Cooke, Clancy & Gruenthal, Carrie J.

Fletcher, John J. Rosenberg, Epstein Becker & Green, P.C., Boston, MA, for Defendant.

### MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OF DEFENDANT EPSTEIN BECKER & GREEN, P.C. (# 65)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On September 11, 2000, this action was removed from the Superior Court of the Commonwealth of Massachusetts pursuant to 28 U.S.C. § 1441.(# 1) Plaintiffs John Meltzer and Julee Mitchell (hereinafter respectively "Meltzer" and "Mitchell", or collectively "plaintiffs") filed their first amended complaint (# 2) eleven days later on September 22, 2000. That amended complaint named the initial defendant, Ralph Grant (hereinafter "Grant"), and added Epstein Becker & Green, P.C. (hereinafter "Epstein Becker") as a co-defendant. In lieu of filing an answer, Grant and Epstein Becker filed a motion to dismiss the amended complaint. (# 4)

On July 11, 2001 the plaintiffs filed a motion to amend the amended complaint in order to add a claim for promissory estoppel (# 34 [2]) which motion was granted approximately two weeks later.[3] On August 1, 2001 Grant and Epstein Becker filed a renewed motion to dismiss (# 35) along with a memorandum in support of the motion. (# 36) The amended and supplemented complaint, filed on August 2, 2001, incorporated three counts in which Epstein Becker was named as a defendant: Count 4 (aiding and abetting), Count 6 (conspira-

---

2. This motion followed on the heels of submissions made on June 28, 2001, a motion by Meltzer and Mitchell to amend the amended complaint (# 31), and on July 11, 2001, a motion by the plaintiffs for leave to file a second motion to amend to include an inadvertently omitted claim. (# 32)

3. The amended and supplemented complaint also rearranged and renumbered the counts. (compare # 37 with # 32)

cy), and Count 9 (intentional infliction of emotional distress). (# 37) Shortly thereafter on August 24, 2001 the plaintiffs submitted a memorandum in opposition to the defendants' motion to dismiss. (# 41)

On October 19, 2001 a stipulation of dismissal without prejudice with respect to defendant Grant was filed. (# 51) On October 23rd that stipulation was approved. On or about December 7, 2001, Meltzer and Mitchell filed a state court action against Grant, *John P. Meltzer and Julee Mitchell v. Ralph Grant*, Massachusetts Superior Court Civil Action No. 01–05623–BLS. The state complaint was amended in mid-January, 2002; the factual allegations of the state amended complaint are virtually identical to the factual allegations of the amended and supplemented complaint in the instant case. (compare Supplemental Statement # 79 ¶ 2; Exh. B ¶¶ 7–61 with # 37 ¶¶ 6–60)

A hearing on the remaining defendant's motion to dismiss in the instant case was held on January 14, 2002 and on March 28, 2002 a memorandum and order (# 56) issued denying the dispositive motion.

On July 1, 2002, Epstein Becker filed a Motion for Summary Judgment (# 65) as well as a statement of undisputed facts (# 66), a memorandum in support (# 67), and two affidavits (## 68, 69). The defendant claimed entitlement to the entry of judgment as a matter of law on the grounds that the litigation privilege afforded a complete defense to the claims alleged against it or, alternatively, that summary judgment should be granted simply upon analysis of the undisputed facts. (# 65)

The trial of a related case in the state court got underway in the summer of 2002. On July 24, 2002 after the plaintiffs rested their case before the jury, Judge Allan van Gestel, the presiding Superior Court judge, granted a directed verdict in favor of the defendant, Grant. (Supplement To Record # 84 at 1 and Exh. A) The final judgment entered on July 26, 2002 as follows: "...the Action be and hereby is dismissed on the merits as to Counts 1, 3, 5, 6, 8, 10, 11, and 12. Counts 2, 4, 7 and 9 were withdrawn by the plaintiffs." (# 79 ¶ 5 and Exh. E)

After an extension of time, on August 5, 2002 the plaintiffs submitted a memorandum in opposition to Epstein Becker's summary judgment motion (# 71), a response to the defendant's statement of undisputed material facts (# 72) and two affidavits (## 74, 75).

In its reply memorandum (# 78) filed on August 13, 2002, Epstein Becker noted the recent state Superior Court judgment and argued that the preclusive effect of that final judgment barred the claims alleged by Meltzer and Mitchell in the instant case. (# 78 at 4) On August 21, 2002 the plaintiffs filed a surreply to the defendant's motion for summary judgment in which Meltzer and Mitchell conceded that "[u]nder the principles of collateral estoppel, the judgment in the state court action precludes the re-litigation of issues presented by Counts 4 and 6." (# 82 at 1) Included with the surreply was a cross-motion for a stay pending adjudication of the appeal in the related state court matter. (# 82) Epstein Becker opposes the motion to stay the litigation. (# 83) The defendant supplemented the summary judgment record on August 30, 2002, with the filing of portions of the state trial transcripts. (# 84)

On October 17, 2002, a hearing was held on the plaintiffs' cross-motion for a stay. Following the arguments it was determined, first, that the applicability of the doctrine of collateral estoppel to the intentional infliction of emotional distress claim must be decided, and second, if it does not apply, then a decision must be made as to whether the defendant is entitled to summary judgment on that claim on the mer-

its. (# 86) That chartered course shall now be followed.

## II. Facts

At this juncture only one claim in the amended and supplemented complaint remains viable, that being Count 9, a claim for intentional infliction of emotional distress. The recitation of facts herein shall be limited, particularly since plaintiffs' allegations were quite fully reviewed in the context of the motion to dismiss. *See Meltzer v. Grant*, 193 F.Supp.2d 373, 374–6 (D.Mass.2002).

Plaintiffs Meltzer and Mitchell were in business with former defendant Grant until they had a falling out. The situation deteriorated over time, ultimately culminating in Grant declining a proposal by Meltzer and Mitchell to mediate the dispute and firing the plaintiffs as employees without any severance. It was at this point that Grant retained the defendant law firm, Epstein Becker, to represent him. A letter written by Epstein Becker to plaintiffs' counsel forms the basis of the claim of intentional infliction of emotional distress against the law firm.

That letter, dated September 1, 2000, is signed by Attorney Michael J. Tuteur of Epstein Becker and reads in pertinent part:

> As noted above, Ms. Mitchell's and Mr. Meltzer's employment with the Company [Epasys] has been terminated, effective today. In the interest of permitting Epasys to move forward—and in recognition of the fact that Ms. Mitchell and Mr. Meltzer appear to lack the financial resources to reimburse the Company for even a fraction of their misappropriations—Mr. Grant is prepared to do the following: Mr. Grant, for himself and the Company, will forbear from bringing either civil or criminal claims against Ms. Mitchell and Mr. Meltzer if, but only if, on or before September 7, 2000, Ms. Mitchell and Mr. Meltzer: (1)

> acknowledge and agree that their employment with the Company has been terminated, effective today; (2) acknowledge and agree that they hold no position as either officer or director of the Company; (3) disclaim an interest in any assets of the Company, and (4) return all the misappropriated items forthwith. Ms. Mitchell and Mr. Meltzer have until 4:00 p.m. on Thursday, September 7, 2000, to accept this proposal, after which it will be irrevocably withdrawn.

> If Ms. Mitchell and Mr. Meltzer fail to accept the foregoing proposal, Mr. Grant's course of action will be quite simple....

> \*      \*      \*      \*      \*      \*

> ...Mr. Grant will vigorously enforce his rights as shareholder of the Company. Among other things, Mr. Grant will bring derivative claims against Ms. Mitchell and/or Mr. Meltzer for their self-dealing, embezzlement, misappropriation of assets and mismanagement. Mr. Grant will also inform the appropriate authorities concerning Ms. Mitchell's and Mr. Meltzer's improper activities.

Amended and Supplemented Complaint # 37 ¶ 34; Affidavit of Michael J. Tuteur # 69 ¶¶ 20–22.

## III. Applicable Standard of Law

■ There is no apparent dispute on the law:

> The full faith and credit statute, 28 U.S.C. § 1738, requires [the Court] to give "the same preclusive effect to state court judgments—both as to claims and issues previously adjudicated—as would be given in the state court system in which the federal court sits."

*Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 16 (1st Cir.1992) (quoting *Willhauck v. Halpin*, 953 F.2d 689, 704 (1st Cir.1991)); *see also Matsushita Elec. Indus. Co. v.*

*Epstein,* 516 U.S. 367, 372, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *Migra v. Warren City Sch. Dist. Bd. Of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); and *Keystone Shipping Co. v. New England Power Co.,* 109 F.3d 46, 50–51 (1st Cir.1997).

■ In this instance it is Massachusetts law which must be examined in order to decide whether the plaintiffs are precluded by the state court decision from litigating in the federal forum the intentional infliction of emotional distress claim arising out of the termination letter sent to plaintiffs by Epstein Becker.

■ In this Commonwealth, "collateral estoppel (issue preclusion) is appropriate where there is 'an identity of issues, a finding adverse to the party against whom it is being asserted, and a judgment by a court or tribunal of competent jurisdiction.'" *Kyricopoulos,* 967 F.2d at 16 (quoting *Miles v. Aetna Casualty & Surety Co.,* 412 Mass. 424, 427, 589 N.E.2d 314 (1992)). As noted by the First Circuit in *Kyricopoulos,* there is no requirement under Massachusetts law that there be mutuality of parties in order for collateral estoppel to be asserted. *Kyricopoulos,* 967 F.2d at 16; *see also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326–328, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Thus where, as here, the

> party in whose favor collateral estoppel is to be applied was not a litigant in the original action, the central inquiry is whether the party against whom issue preclusion will be applied had a fair opportunity to litigate the issue fully or whether reasons exist to afford the party a chance to relitigate the issue.

*Kyricopoulos,* 967 F.2d at 16 (citing *Brunson v. Wall,* 405 Mass. 446, 451, 541 N.E.2d 338 (1989)).

The inquiry as to whether the plaintiffs had a fair opportunity fully to litigate the issue is guided by application of the four

factor test articulated in *Grella v. Salem Five Cent Savings Bank:*

> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have actually been litigated; (3) the issue must have been determined by a final and binding judgment; and (4) the determination of the issue must have been essential to the judgment.

*Grella,* 42 F.3d 26, 30 (1st Cir.1993).

■ To accomplish this evaluation, the complaints in each suit, the extent of evidence proffered in the state suit, the judgment in the state suit, and the basis of that decision must be considered. If it becomes apparent through this examination that Meltzer and Mitchell did indeed have a fair chance fully to litigate the issue of whether the termination letter rises to the level of extreme and outrageous conduct in the state forum, then further litigation surrounding this issue shall be barred in the instant case.

### IV. Discussion

Each of the four factors of the Grella test needs to be established in order for collateral estoppel properly to be applicable.

#### A. Is It The Same Issue?

The plaintiffs maintain that the issue in the instant case is separate and distinct from that in the state litigation because the conduct of Epstein Becker was different than that of Grant. (# 82 at 3) It is argued that because Epstein Becker actually prepared and delivered the letter, the acts of the law firm differed from those of its client Grant who simply relied on Epstein Becker to send the letter. (# 82 at 3) This is a distinction without a difference, however. The plaintiffs seem to ignore the fact that Epstein Becker was Grant's

agent essentially serving as a conduit by which Grant conveyed his message.[4]

When the amended and supplemented complaint (# 37) from the instant suit is compared to the amended complaint from the state case (# 79 at Exh. B), it is plain that not only are the pertinent causes of action nearly identical, but also that the underlying facts on which the issues depend are absolutely indistinguishable. The complaints from each suit employ exactly the same language to allege the underlying the facts. For example, the following excerpt from the complaint in the state suit sets forth the facts relevant to the intentional infliction claim:

> 34. Grant declined. Grant's response was to escalate his campaign to obtain ownership and control of the entire business by declaring Mitchell and Meltzer immediately fired as employees, without any severance, and by having another law firm, Epstein, Becker & Green, P.C., threaten Mitchell and Meltzer with criminal action if they did not agree—by a deadline a few days from their abrupt termination—to relinquish all their interest in the company and to acquiesce to their firing.
>
> 35. In a letter dated September 1, 2000, Grant had Epstein, Becker & Green, P.C. accuse Mitchell and Meltzer of "defalcations," "embezzlement," "misappropriation of assets" and threaten to bring "criminal claims" against them and to "inform the proper authorities

concerning Ms. Mitchell's and Mr. Meltzer's improper activities" if they did not by 4 p.m. on September 7, 2000, "acknowledge and agree that their employment with the company has been terminated, effective today; (2) acknowledge and agree that they hold no position either as officer or director of the Company; (3) disclaim an interest in any assets of the company, and (4) return all [allegedly] misappropriated items forthwith."

Supplemental Statement # 79 at Exh. B, ¶¶ 34–5.

The verbatim language is found in the amended and supplemental complaint in this instant suit. (# 37 ¶¶ 33–4) There can be no doubt that the issue as presented by the plaintiffs arises out of the same set of facts in both the state and federal suits. Further, the specific count alleging intentional infliction of emotional distress in each complaint denotes the extortionate nature of the letter as being the primary basis of the claim.[5]

There are only two significant differences between Count 6 of the state complaint and Count 9 of the current complaint. Primarily the counts differ due to the addition of Epstein Becker as a co-defendant. (compare # 79 at Exh. B, pp. 23–24 and # 37 at pp. 26–27) The addition of Epstein Becker, however, does not change the dispositive issue of whether the letter rose to the level of conduct required for there to be an intentional infliction of

---

4. The plaintiffs' assertion that Grant simply "relied" on Epstein Becker seems to contradict the facts set forth in both the state and federal cases. In both complaints Meltzer and Mitchell alleged that Grant attempted to take full control of the company "by **HAVING** another law firm, defendant Epstein Becker, threaten Mitchell and Meltzer with criminal action if they did not agree..." and that Grant "**HAD** Epstein Becker accuse Mitchell and Meltzer..." (# 37 at 33, 34) and (# 79 at 34, 35)(emphasis added) These allegations undermine the plaintiffs' argument that Grant

was simply "relying" on his attorneys. Rather, they are indicative of the fact that Epstein Becker was acting at the direction of Grant with Grant taking an active role in the issuance of the termination letter.

5. In # 37 ¶ 109, the plaintiffs assert that the conduct of Epstein Becker is, inter alia, extortion in violation of Mass. Gen. L. c. 265, § 25. This same averment was made in the state court complaint regarding Grant. (see # 79 at Exh. B, ¶ 95)

emotional distress. As discussed supra, there is no longer a mutuality requirement, so merely resurrecting a previously contested issue against a party who was not a party to a prior suit is insufficient to avoid the preclusive effect of collateral estoppel.[6]

The other difference between the respective counts in the two complaints is that the plaintiffs allege in the federal suit that the sending of the letter by Epstein Becker was in violation of the Massachusetts Rules of Professional Conduct 3.4(h). (# 37 ¶ 109) Whether the sending of the letter constitutes a violation of the professional rules of conduct is irrelevant for present purposes in that such an assertion does not alter the fact that Judge van Gestel found that the termination letter did not amount to extreme or outrageous conduct as required to establish intentional infliction of emotional distress.

In sum, a comparison of the two relevant counts reveals that the issue in both cases, i.e., whether the sending of letter constituted extreme or outrageous conduct, is identical. Thus, the first factor of the collateral estoppel analysis is present.

### B. Was the Issue Actually Litigated?

■ For an issue to be considered "actually litigated" for preclusion purposes, it must have been " 'subject to an adversary presentation and consequent judgment' that was not 'a product of the parties' consent and is a final decision on the merits." *Keystone*, 109 F.3d at 52 (quoting Jack H. Friedenthal et al., Civil Procedure § 14.11 at 672, 673 (1985)). An examination of the pleadings, as discussed supra, together with the Superior Court transcript excerpts makes it evident that the issue was indeed actually litigated.

A review of transcript excerpts from the state trial shows that the plaintiffs had a fair opportunity fully to litigate the issue. In his testimony, Meltzer was thoroughly questioned regarding the letter, who sent it, on whose behalf it was sent, and what effect the letter had on him. (see # 84 at Exh. B) Meltzer specifically stated that the letter was sent by Epstein Becker on behalf of Grant. (# 84 at Exh. B) Mitchell also testified fully as to the contents of the letter and the reaction that it induced from her. (see # 84 at Exh. C)

The transcript from the July 24, 2002 hearing on the motion for a directed verdict in the state case reveals that Attorney D'Alcomo representing Meltzer and Mitchell actively argued this issue before Judge van Gestel. (# 84 at Exh. A, pp. 73–74) Attorney D'Alcomo contended that the termination letter amounted to extortionate behavior which can be the basis of a claim for intentional infliction of emotional distress. (# 84 at Exh. A, pp. 73–74) Judge van Gestel was not persuaded:

> . . . I have heard no evidence as I say, I haven't read all of the documents, but I heard no evidence from the witness stand that would meet the test of extreme and outrageous beyond all possible bounds of decency and, not or, utterly intolerable in a civilized community. So I see no basis to go forward on a claim for emotional distress.

Supplement To Record # 84 at Exh. A, p. 119.[7]

---

6. Even if mutuality were still required, Epstein Becker likely would be entitled to the protection of collateral estoppel due to its privity with Grant who was the sole defendant in the state suit.

7. Although Judge van Gestel qualified his statement from the bench by noting that he had yet to read all of the materials in discovery, I have completely reviewed the letter and the other evidence in the record. It is my opinion that Judge van Gestel was correct in holding that the conduct at issue did not rise to the level of behavior required to meet the high standard for a claim of intentional infliction of emotional distress which is "extreme and outrageous, beyond all possible decency

Despite the full testimony by each of the plaintiffs regarding whether the letter constituted extreme and outrageous conduct as well as the argument before the trial judge by the plaintiffs' attorney, Meltzer and Mitchell assert that the issue was not fully litigated. The argument that the previous state court case concerned a different issue because the Epstein Becker actually composed and sent the letter is unavailing: all of the underlying facts are the same; the language used in the coinciding counts is nearly identical; and the testimony and oral arguments of both the attorney for the plaintiffs and for the defendant were directed to the issue of whether the conduct surrounding the termination letter rose to the level of outrageousness required for an intentional infliction of emotional distress. Thus, not only did the plaintiffs have a fair opportunity fully to litigate the issue as to whether the conduct (regardless of whether it is the requesting, the composition, or the dispatching) surrounding the letter constituted intentional infliction of emotional distress, but the involvement of the current defendant in the conduct related to said letter was examined as well.

   C. *Was There a Final and*
     *Binding Judgment?*

   D. *Was the Issue Essential*
     *to the Judgment?*

■ Because they are so closely related, the final two factors of the collateral estoppel analysis may be considered together. The third requirement for the application of issue preclusion is the rendering of a previous final judgment on the issue. The plaintiffs assert that Judge van Gestel's decision granting the directed verdict did not amount to a final judgment on the issue as to whether the letter rose to the level of extreme or outrageous conduct. According to Meltzer and Mitchell, because Judge van Gestel did not explicitly rule on the issue of the termination letter amounting to extreme or outrageous conduct, the issue cannot be precluded from the instant case. I disagree.

■ Although Judge van Gestel did not specifically make such a finding in his directed verdict ruling, the general verdict that he rendered establishes through implication that he found that the conduct involving the letter did not constitute extreme or outrageous conduct. "[A]n 'issue may be actually litigated and resolved "even if it is not explicitly decided," as long as it is logically necessary to [the court's] final decision.'" *Keystone*, 109 F.3d at 52 quoting *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 982 (1st Cir.1995); *Grella*, 42 F.3d at 30–31. In the state case the plaintiffs asserted multiple bases including the termination letter for their intentional infliction of emotional distress claim. Judge van Gestel was not persuaded that any of the alleged behavior, including the conduct relating to the letter, rose

and utterly intolerable in a civilized community." *Payton v. Abbott Labs*, 386 Mass. 540, 555, 437 N.E.2d 171, 180 (1982) (citing *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145, 355 N.E.2d 315 (1976)). Liability for this cause of action cannot be established by "'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a de-

gree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466, 681 N.E.2d 1189, 1197 (1997) (citations omitted). That is an extremely high standard to meet and, as a matter of law, the record in this case would not support a finding that such behavior occurred. Thus, even if collateral estoppel did not apply in the instant case, the plaintiffs' claim would not have survived the motion for summary judgment on the merits.

to the requisite level of conduct as he directed a verdict on Count 6 for the defendant.

To summarize, the plaintiffs had a fair opportunity fully to litigate, and did litigate, in a previous state action the issue of whether the conduct with regard to the September 1, 2000 letter was so extreme and outrageous as to support a claim for intentional infliction of emotional distress. A Massachusetts Superior Court judge directed a verdict following the plaintiffs' full presentation of evidence on the issue and final judgment entered in favor of the defendant. Under the full faith and credit statute, I find that the plaintiff is collaterally estopped from relitigating the issue as to whether the conduct with regard to the termination letter rises to the level of extreme or outrageous conduct as required to sustain a successful claim for the intentional infliction of emotional distress. Thus, Epstein Becker is entitled to the entry of summary judgment on Count 9 of the amended and supplemented complaint.

### V.   *Conclusion And Order*

For the reasons stated, it is ORDERED that the Motion For Summary Judgment of Defendant Epstein Becker & Green, P.C. (# 65) be, and the same hereby is, ALLOWED. Judgment shall enter for the defendant.