NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1319

TRESCA BROTHERS SAND & GRAVEL, INC.

vs.

EAMES STREET, LLC, & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Tresca Brothers Sand & Gravel, Inc. (Tresca), appeals from a summary judgment entered in Superior Court in favor of the defendant, Eames Street, LLC (Eames). Tresca also challenges the dismissal of its claims for intentional interference with contractual relations, intentional interference with advantageous business relations, and conspiracy, as well as the denial of its request to amend its complaint to add claims for violations of G. L. c. 93, G. L. c. 93A, and abuse of process.  We affirm.

---

[1] Benevento Concrete Corp.; Benevento Family Limited Partnership; Benevento Family, LLC; Charles J. Benevento; planning board of Wilmington; board of appeals of Wilmington; and town of Wilmington.

Background.  In 2003, Tresca entered into a lease with Glens Falls Lehigh Cement Company (Lehigh) for two noncontiguous portions (leased premises) of a property in Wilmington (property) upon which Lehigh operated a cement terminal.  The lease also grants Tresca a nonexclusive easement between the two areas that comprise the leased premises.  The lease defines the boundaries of the leased premises by reference to an attached exhibit, which consists of a site plan of the property with hand-drawn boundaries identifying the leased premises (site plan).  The lease provides that the leased premises include "all licenses, permits, and other agreements appurtenant thereto," and that the term of the lease will commence when Tresca obtains the necessary permits to operate a concrete plant on those premises.  Tresca and Lehigh contemporaneously entered into a separate agreement under which Lehigh would supply, and Tresca would purchase, cement for Tresca's facilities in Wilmington and Millis.

In 2015, Tresca applied to the town of Wilmington (town) board of appeals (board) for permits to operate a concrete plant.  The plan Tresca submitted required construction upon portions of the property outside of the boundaries shown on the site plan.  The board denied the permits and Tresca appealed to

2

the Superior Court, which, following a trial, directed the board to issue the permits.

In April 2019, Lehigh sold the property to Martignetti Development, LLC, which is one of Tresca's cement industry competitors. The agreement memorializing the sale disclosed the Tresca lease and stated that at closing, the lease would be assigned to Martignetti Development, LLC. In June 2019, Martignetti Development, LLC changed its name to Eames. In October 2019, Eames informed the town that it had purchased the property, Tresca's use of the property was limited to those portions of the property identified on the site plan, and the remaining portions of the property would be used for purposes other than the proposed concrete plant. In November 2020, the board issued special permits to Tresca.

Tresca filed this action against Eames; Eames's sole member, Charles Benevento; and Benevento's other companies (Benevento defendants).[2] Tresca alleged that Benevento and his companies actively opposed Tresca's efforts to obtain the permits and sought a declaration that it was entitled to proceed with the construction of the concrete plant. Eames counterclaimed, seeking a declaration that Tresca does not have

_____

[2] Tresca also named the town, the board, and the town's planning board as defendants. Those municipal defendants, however, are not parties to this appeal.

3

the right to use any portion of the property outside the portions identified on the site plan.

A judge of the Superior Court allowed Eames's motion to dismiss Tresca's claims for intentional interference with contractual relations, intentional interference with advantageous business relations, and conspiracy. The judge also denied Tresca's motion for reconsideration. Thereafter, Tresca moved to amend its complaint to add claims for violations of G. L. c. 93, G. L. c. 93A, and abuse of process. A second judge denied Tresca's motion to amend and subsequent motion for reconsideration. The denials of Tresca's motions to amend and reconsider were upheld by a single justice of this court.

Eames then moved for summary judgment, asserting that the lease was unambiguous and Tresca did not have the right to build a concrete plant outside the area identified as the leased premises on the site plan. Tresca countered that the site plan was ambiguous. A third judge allowed the motion, entering judgment in favor of Eames on Tresca's claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and specific performance, and on Eames's counterclaim for declaratory relief. Tresca appealed.

Discussion. 1. Summary judgment ruling. a. Standard of review. Tresca contends that the judge erred in granting

4

summary judgment to Eames.  "We review a decision on a motion for summary judgment de novo."  Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 330 (2021) (Pesa).  "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Barbetti v. Stempniewicz, 490 Mass. 98, 107 (2022), quoting Pesa, supra; Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

b.  Whether the lease was ambiguous.  Tresca challenges the judge's conclusion that the lease is unambiguous and, by its terms, Tresca does not have the right to build a concrete plant outside of the area shown on the site plan attached to the lease.

Whether a legal document's language is ambiguous, and the interpretation of an unambiguous document, are questions of law that we review de novo.  See Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008).  To determine whether a document is ambiguous, "the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties."  Id. "[A]n ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other's."  Suffolk Constr. Co. v. Lanco

5

Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999), quoting Jefferson Ins. Co. v. Holyoke, 23 Mass. App. Ct. 472, 475 (1987). Extrinsic evidence may be admitted only when the document is ambiguous on its face or as applied to the subject matter. See General Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835-836 (2007).

i. Identification of the leased premises. Tresca first argues that the lease and attached site plan do not set forth a definite description of the leased premises. The lease states that the leased premises includes a "portion of the premises shown on . . . Exhibit 'A.'" Exhibit A is the site plan of the property, which is marked with hand-drawn boundaries and annotations. We agree with the judge that, although this site plan "is imprecise in the sense that it does not include the exact dimensions of the drawn boundaries," the fact that the boundaries are hand-drawn does not create a dispute of material fact that precludes summary judgment. Rather, the lease and site plan unambiguously show that when Lehigh and Tresca executed the lease in 2003, they intended to enter into a lease for only a portion of the property, as marked by the approximate boundaries in the site plan.

ii. Permits appurtenant to the leased premises. Tresca contends that the judge erred in concluding that the permits and

6

alleged verbal agreements between Lehigh and Tresca concerning the scope of the leased premises were not appurtenant to the leased premises. Section 1.02(c) of the lease provides that the leased premises includes "[a]ll licenses, permits and other agreements appurtenant thereto." At summary judgment, Tresca contended that the language "permits" and "other agreements" contemplates future permits and agreements between the parties, including the special permits issued by the board in 2020, as well as verbal and written agreements allegedly entered into by Lehigh and Tresca after execution of the lease, that granted Tresca the right to build a concrete plant outside the boundaries marked on the site plan. Because appurtenant rights must be in use at the time a leasehold interest is granted, see Melville Shoe Corp. v. Kozminsky, 268 Mass. 172, 180-181 (1929), and there is no evidence that Lehigh held a permit to construct a concrete plant in 2003, the judge concluded that there were no appurtenant permitting rights to be granted under the lease. The judge similarly rejected Tresca's argument that the agreements allegedly entered into by Lehigh and Tresca after the execution of the lease amounted to "other agreements appurtenant" to the leased premises.

Tresca now argues that the judge erred by ignoring that, under § 1.03 of the lease, "Tresca's tenancy did not and could

7

not begin until after" the town granted the special permits in 2020.  It does not appear, however, that Tresca made this argument in response to Eames's motion for summary judgment. "An issue not raised at the trial court is not entitled to review here."  Edgar v. Edgar, 406 Mass. 628, 629 (1990).  Even if the argument were not waived, we would still reject it. Section 1.03 provides that the term of the lease:

> "shall commence simultaneously with and shall be contingent upon (i) agreeing on the plan to be attached as Exhibit A and (ii) obtaining all necessary municipal state or federal permits to occupy and operate said premises as a concrete batch plant . . . and commencing operation of its concrete batch plant on the leased premises."

It does not follow, as Tresca argues, that a special permit contemplating operation of a concrete plant beyond the scope of the leased premises, obtained seventeen years after the lease's execution, becomes "incorporated into the definition of the leased premises under § 1.02(c)."  To the contrary, § 1.03 refers to the operation of a concrete plant on the premises as defined in the preceding section, and § 2.02 addresses the procurement and maintenance of "any governmental license or permit" required for "the proper and lawful conduct of Lessee's business on the premises or in any part thereof" (emphasis added).  We therefore reject Tresca's argument that, under § 1.02(c), the special permits it obtained in 2020 "expanded the

8

definition of the leased premises, or at the very least, created ambiguity as to the scope of the leased premises."

iii. <u>Custom and practice of commercial leasing</u>. Tresca also contends that the lease is ambiguous "under the custom and practice of commercial leasing." It cites an expert report asserting that the site plan did not represent a final understanding between Tresca and Lehigh, and that Tresca and Lehigh likely had a mutual understanding that the area defined as the leased premises would need to be modified during the municipal approval process. Tresca moved to supplement the summary judgment record with this expert report after the record was filed. The judge denied its motion, explaining that he had "determined that the relevant portions of the lease agreement at issue are not ambiguous" and "the proposed expert testimony as to trade usage [was] not material to the Court's decision." See <u>Cesana</u> v. <u>Johnson</u>, 232 Mass. 444, 448 (1919). Because Tresca does not challenge in this appeal the judge's denial of its motion to supplement the summary judgment record, the report is not before us and we cannot consider it. See <u>Fidelity Mgt. & Research Co</u>. v. <u>Ostrander</u>, 40 Mass. App. Ct. 195, 200 (1996), quoting <u>Cullen Enters., Inc</u>. v. <u>Massachusetts Prop. Ins. Underwriting Ass'n</u>, 399 Mass. 886, 889 n.9 (1987) ("In our review of a motion for summary judgment we are 'confined to an

9

examination of the materials before the court at the time the rulings were made'").

iv. <u>Lehigh and Tresca's conduct after execution of the lease</u>. Lastly, Tresca asserts that the lease's ambiguity is evidenced by the actions of Lehigh and Tresca following its execution. It points to the fact that Lehigh assisted Tresca with its efforts to obtain permits, and those efforts called for the concrete plant to make use of land beyond the area identified on the site plan, and that Lehigh allowed Tresca to prepare for its project on land outside that area. We do not, however, consider extrinsic evidence "to create an ambiguity when the plain language is unambiguous." <u>General Convention of New Jerusalem in the U.S. of Am., Inc</u>., 449 Mass. at 835, citing <u>Panikowski</u> v. <u>Giroux</u>, 272 Mass. 580, 583 (1930). As discussed <u>supra</u>, the lease unambiguously shows that Lehigh and Tresca entered into a lease for only a portion of the property, as delineated in the site plan in the attached exhibit. Thus, even if Lehigh and Tresca contemplated that Tresca would construct and operate a concrete plant beyond the scope of the leased premises, there was no "initial ambiguity" regarding how the lease defined such premises. See <u>General Convention of New Jerusalem in the U.S. of Am., Inc</u>., <u>supra</u> at 835-836.

10

Accordingly, there is no genuine issue of material fact regarding the lease's ambiguity.

c. Whether the lease was amended. As an alternative ground for challenging the summary judgment ruling, Tresca contends that the judge erred in rejecting its claim that Lehigh and Tresca amended the lease. Again, we disagree.

Where "the parties have defined the method in their contract to bring about" a modification to the terms of the contract, any "attempt to do so that does not conform to the method laid down by them is invalid" (quotation and citation omitted). Bright Horizons Children's Ctrs., Inc. v. Sturtevant, Inc., 82 Mass. App. Ct. 482, 486 (2012). Here, § 20.05 of the lease provides that it "shall not be modified except by a writing, subscribed by both parties." Tresca does not address that provision in its brief, but rather contends that the lease "did not require some formally enumerated amendment to become effective" because it "contemplated the integration of future permits in § 1.02(c)." As discussed supra, there is no merit to Tresca's assertion that § 1.02(c) contemplates the incorporation of permitting rights not in existence at the time the lease was executed into its definition of leased premises.

Tresca did not present any evidence of a written amendment to the lease in its opposition to Eames's summary judgment

11

motion.  Instead, Tresca argues that it and Lehigh engaged in a joint enterprise to develop a concrete plant outside the scope of the leased premises and that the lease was modified as the result of "Lehigh's written endorsement of permit applications" contemplating such an expanded concrete plant.  Those permit applications are not in the summary judgment record either, however, and, as the judge explained, there is no evidence of "what Lehigh represented or agreed to by signing the applications" or the authority of the employees who signed the permit applications to modify the lease.

Tresca also points to evidence that "Lehigh's representatives made multiple oral representations subsequent to the Lease's execution that" the site plan attached to the lease "did not encompass the final understanding as to the scope of the leased premises."  Setting aside that some of this evidence is also outside the summary judgment record, it does not create a disputed issue of material fact.  First, a lease is subject to the Statute of Frauds and therefore cannot be modified orally. See Matter of Estate of Widdiss, 98 Mass. App. Ct. 808, 814 (2020), citing G. L. c. 259, § 1 (Fourth).  Second, as discussed, § 20.05 of the lease provides that it may be modified only "by a writing, subscribed by both parties."  Third, "a party asserting that an oral modification occurred must present

12

evidence that the parties reached an agreement as to its terms," Sea Breeze Estates, LLC v. Jarema, 94 Mass. App. Ct. 210, 217 (2018), and the summary judgment record does not contain any evidence that Lehigh and Tresca agreed to modify the lease. To the contrary, Lehigh's designee under Mass. R. Civ. P. 30 (b) (6), as appearing in 489 Mass. 1401 (2022), testified that the lease was not amended.[3]

2. Dismissal of Tresca's intentional interference and conspiracy claims. Tresca argues that the judge erred by dismissing its claims for intentional interference with contractual relations, intentional interference with advantageous business relations, and conspiracy. "We review the grant of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor . . . ." Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 43 (2022). "In assuming the facts as

---

[3] For similar reasons, we reject Tresca's contention that "Lehigh's assistance . . . estops Benevento from denying Tresca's right to operate a batch plant in accordance with the permits it obtained." The judge dismissed Tresca's claim of equitable estoppel against the Benevento defendants, and Tresca has not challenged that ruling in its appeal. As discussed, the evidence does not support Tresca's claims that "the anticipated permits" were incorporated "into the definition of the leased premises," or that the parties made oral or written modifications to the lease after its execution.

13

alleged, however, '[w]e do not regard as "true" legal conclusions cast in the form of factual allegations'" (citation omitted). Edwards v. Commonwealth, 477 Mass. 254, 260 (2017). "To survive a motion to dismiss, the facts alleged must plausibly suggest[] (not merely be consistent with) an entitlement to relief" (quotation omitted). Id., quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).

Tresca's claims were properly dismissed.

> "To prevail on a claim of tortious interference with a contract, a plaintiff must establish that (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions" (quotation omitted).

Weiler v. PortfolioScope, Inc., 469 Mass. 75, 84 (2014), quoting Psy-Ed Corp. v. Klein, 459 Mass. 697, 715-716 (2011). The judge dismissed Tresca's claims because it failed to allege that any conduct by the Benevento defendants caused a third party to break the lease, which, the judge noted, "is very much still in effect and binding on Eames Street." See Blackstone v. Cashman, 448 Mass. 255, 259 n.8 (2007) ("A party to a contract cannot be held liable for intentional interference with that contract"). Although Tresca contends that the judge erred by conflating Benevento "and his various corporate entities" with Eames, Tresca's complaint does not make any nonconclusory allegations

14

regarding the conduct of the Benevento defendants that are distinct from the alleged conduct of Benevento himself, who is the sole member of Eames.  See Iannacchino, 451 Mass. at 636 (conclusory assertions insufficient to withstand motion to dismiss).  Furthermore, there is no inherent inconsistency in the judge's decision to dismiss Tresca's intentional interference claim while allowing its contract claims to proceed to discovery.  See Duff v. McKay, 89 Mass. App. Ct. 538, 547 (2016) (party that brings action for breach of contract may still be bound to that contract).

Tresca's claim for intentional interference with advantageous relations fails for similar reasons.

> "To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions."

Blackstone, 448 Mass. at 260.  Here, Tresca failed to plausibly allege "an advantageous relationship with a third party" that was broken as the result of the defendants' conduct.  Id.  The relationship at issue here involves the lease between Tresca and Lehigh, which was assumed by Eames in 2019 and remains in effect.

15

Because Tresca does not develop any argument or cite any legal authority in support of its civil conspiracy claim, that argument is waived.  See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).  See also K.A. v. T.R., 86 Mass. App. Ct. 554, 567 (2014).  In addition, we agree with the judge's conclusion that Tresca failed to plausibly allege any concerted action by the defendants rising to a tortious act.  Contrast Williamson v. Barlam, 103 Mass. App. Ct. 727, 733 (2024), citing Bartle v. Berry, 80 Mass. App. Ct. 372, 383-384 (2011).

3.  Denial of leave to amend.  Lastly, Tresca argues that the second judge erred in denying its motion to amend its complaint to add additional claims for violations of G. L. c. 93, G. L. c. 93A, and abuse of process.[4]  We review the denial of a motion to amend a complaint for abuse of discretion.  Chang v. Winklevoss, 95 Mass. App. Ct. 202, 212 (2019).  Although leave to amend to assert new claims "should be 'freely given when justice so requires,' Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), such leave may be denied where there is undue delay, undue prejudice to the opposing party, or futility in the amendment."  Nguyen v. Massachusetts Inst. of Tech., 479 Mass. 436, 461 (2018).  Tresca moved to amend in November 2021,

_____

[4] A single justice upheld the denials of this motion and a related motion for reconsideration.

16

sixteen months after the tracking order deadline for such motions had expired and eight months after the first judge decided the defendants' motion to dismiss.  The judge found the lateness of Tresca's motion unjustified because "no discovery [had] ensued in the litigation" and, therefore, there were "no newly discovered facts or claims that [Tresca] did not have available to it when the action was commenced."  She concluded that this failure to reasonably advance the litigation amounted to undue delay, noting that "the costs and time associated with reversing and repeating litigation stages is implicitly prejudicial to the other party(ies)."  The judge was also understandably unpersuaded by Tresca's argument that its delay was justified in light of the defendants' "strategy of filing sham litigation and delaying or preventing [Tresca's] concrete plan[t]."  We discern no abuse of discretion.

<u>Judgment affirmed</u>.

By the Court (Meade, Ditkoff & Toone, JJ.[5]),

Clerk

Entered:  December 2, 2025.

---

[5] The panelists are listed in order of seniority.

17